Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
CRAIG L. HOOGESTRAAT,
Applicant and Appellee,
v.
MARK BARNETT, South Dakota Attorney General, And Joyce Hazeltine, South Dakota Secretary of State,
Respondents and Appellants,
and Thomas Redlin, South Dakota Pork Producers Council, Inc., South Dakota Cattlemen's Association, South Dakota Farm Bureau Federation, South Dakota Soybean Association, South Dakota Corngrowers Association, South Dakota Wheat, Inc., and Vote No on E Committee,
Intervenors and Appellants.
South Dakota Supreme Court
Appeals From The Sixth Judicial Circuit
Hughes County South Dakota
Hon. Steven L. Zinter, Judge
#20670, 20672 - Affirmed
Douglas E. Kludt, Churchill, Manolis, Freeman, Kludt & Shelton, Huron, SD
Attorneys for applicant and appellee.
Mark Barnett, Attorney General
Jeffrey P. Hallem, Roxanne Giedd
Assistant Attorneys General, Pierre, SD
Attorneys for respondents and appellants.
Jerome B. Lammers, Lammers, Lammers and Kleibacker, Madison, SD
Attorneys for intervenors and appellants.
Considered on Briefs Sep 3, 1998; Opinion Filed Sep 3, 1998
SABERS, Justice
[Â¶1] The narrow question in this appeal is whether the statutory requirement that the Attorney General succinctly describe the "purpose and legal effect" of proposed 1998 Constitutional Amendment E permits a statement that the proposed amendment "could result in successful lawsuits against the State of South Dakota, under the U.S. Constitution." We conclude that the statement exceeds the authority granted by SDCL 12-13-9 and affirm the judgment and order issuing writ of certiorari.
FACTS
[Â¶2] On May 29, 1997, Dennis Wiese and Charles Johnson filed an initiated constitutional amendment petition in the Secretary of State's office. It is designated "Constitutional Amendment E"(fn1)  and proposes to add four new sections concerning ownership and interest in farming to Article XVII of the Constitution of the State of South Dakota.
[Â¶3] The Attorney General delivered an explanation of Constitutional Amendment E to the Secretary of State, SDCL 12-13-9, who, in turn, delivered it, as well as other statutorily required materials to each county auditor. SDCL 12-13-1. The Attorney General's explanation of Constitutional Amendment E provides:


Attorney General Explanation: Currently, the Constitution does not restrict the use or ownership of farmland. However, the Legislature has prohibited some corporations from engaging in farming, and in certain hog production activities.
Amendment E would create constitutional prohibitions. Many corporations, limited partnerships, limited liability companies, and other business entities would not be permitted to own farmland or engage in farming or livestock production.
Amendment E does not affect current ownership or leasing of farmland, or livestock production, by these businesses. However, it would prohibit them from farming new land, or buying, leasing, or contracting for any new interest in farm lands, farming or livestock production. The Amendment may potentially prevent these businesses from renewing current leases.
Amendment E would not affect qualified family farm corporations, nonprofit corporations, certain ag co-ops, research farms, alfalfa leases, livestock futures, certain custom farm work, security interests, the purchase of land for nonfarm purposes, and other activities.
Amendment E could result in successful lawsuits against the State of South Dakota, under the U.S. Constitution.
A vote "Yes" will prohibit many types of businesses from owning farmlands. It will also prevent these businesses from having interests in agricultural contracts, farmlands, or operations.
A vote "No" will leave the constitution as it is.
(emphasis added).
[Â¶4] Craig L. Hoogestraat, a Turner County farmer and hog producer, applied to the circuit court for an alternative writ of mandamus. He objected to the sentence in the above ballot explanation which said "Amendment E could result in successful lawsuits against the State of South Dakota, under the U. S. Constitution" on the grounds that it exceeded the authority granted to the Attorney General by SDCL 12-13-9. The circuit court entered an order granting alternative writ of mandamus and ordered the Attorney General and Secretary of State to direct the county auditors not to print ballots for the November 3, 1998, election until the issue was resolved.
[Â¶5] At the hearing on the matter, the trial court allowed Thomas Redlin, et al, a membership coalition of agricultural, business, and civic groups to intervene. The court also converted the proceeding from mandamus to certiorari. Neither Hoogestraat, the Attorney General, nor the Secretary of State objected to the conversion.
[Â¶6] Following argument, the circuit court entered a judgment and order issuing a writ of certiorari. The court concluded that:


this disputed sentence of the ballot explanation does not involve an explanation of the constitutional amendment's provisions. Rather, it involves an opinion of a possible collateral consequence occurring only upon adoption of the amendment. Furthermore, the disputed portion of the explanation is likely to create prejudice against the proposed amendment. This Court concludes that SDCL 12-13-9 was not intended to include ballot explanations of possible collateral consequences especially where the explanation is likely to create prejudice either for or against an amendment. This Court, therefore concludes that the disputed portion of the ballot explanation for Constitutional Amendment E was outside the scope of the Attorney General's statutory authority, and that certiorari is an appropriate remedy.
The Attorney General and Secretary of State were ordered to notify each county auditor and remove the disputed language from the ballot explanation.
[Â¶7] The Attorney General and Secretary of State filed a notice of appeal to this Court on August 27, 1998. The Intervenors filed a notice of appeal the next day. County auditors must have certified ballot questions printed as official ballots by September 22, 1998, when absentee voting starts. SDCL 12-16-1. To do so, the Attorney General and Secretary of State advised this Court that the issue on appeal needed to be resolved by September 8, 1998, in order to allow a reasonable time to print ballots. On application, we expedited the briefing schedule and, after due consideration, announce our decision today, September 4, 1998.
ANALYSIS AND DECISION
[Â¶8] The full text of a proposed amendment to the constitution is not printed on the election ballot in South Dakota. SDCL 12-13-11. Instead, the material printed on the ballot consists of the title, explanation, recitation, place for voting, and the statement required by SDCL ch 12-13. Id. The Attorney General is required to prepare this material. SDCL 12-13-1(fn2) , SDCL 12-13-9.
[Â¶9] According to SDCL 12-13-9,


Before the fourth Tuesday in July, the attorney general shall deliver to the secretary of state the statement, the title, the explanation, and a clear and simple recitation of the effect of a "Yes" or "No" vote. The explanation shall state succinctly the purpose and legal effect of the proposed amendment to the Constitution, the initiated measure, or the referred law. The explanation shall be a clear and simple summary of the issue and may not exceed two hundred words in length. On the printed ballots, the title shall be followed by the explanation and the explanation shall be followed by the recitation. (emphasis added).
While at least twenty-eight states have ballot explanation requirements,(fn3)  South Dakota's requirement that the Attorney General state the "legal effect" of a proposed constitutional amendment is unique. Consequently, court opinions from other jurisdictions construing ballot explanations in the context of their specific statutory directives provide minimal guidance.
[Â¶10] This Court has, however, considered whether a ballot statement satisfied the requirements of SDCL 12-13-9 which, at that time, required the Attorney General to prepare a "concise" statement of "the purpose and legal effect of each proposed constitutional amendment ... particularly with reference to existing law." Barnhart v. Herseth, 88 SD 503, 513, 222 NW2d 131, 136 (1974).
[Â¶11] The Barnhart court noted that the language "purpose and legal effect" led to the conclusion that a ballot explanation of a proposed constitutional amendment "was to be identified to the electorate in easily understood language enabling the voters to distinguish this amendment from the other ... propositions on the ballot[]" Barnhart, 88 SD at 514, 222 NW2d at 137. The court rejected the argument that a ballot explanation must educate the electorate since voters are presumed familiar with proposed amendments through the publicity given the amendments in the time leading up to the election. Id. "[T]he basic purpose of a ballot statement is to identify an amendment to an informed electorate rather than to educate it." Id., 88 SD at 515, 222 NW2d at 137.
[Â¶12] Consequently the focus of a ballot explanation is restricted. It must clearly, simply, and succinctly identify and summarize the purpose and legal effect of a proposed amendment to an already educated and informed voter who has ten minutes in which to vote. SDCL 12-13-9; SDCL 12-18-15; Barnhart, 88 SD at 514, 222 NW2d at 137. The legal effect that must be succinctly stated refers to the result that the proposed constitutional amendment will have upon existing law. See Black's Law Dictionary 514 (6th ed 1990). It does not refer to collateral, theoretical or potential consequences which may or may not occur.
[Â¶13] In this case, the Attorney General's statement that Proposed Constitutional Amendment E "could result in successful lawsuits against the State of South Dakota, under the U.S. Constitution" goes beyond the narrow authority granted by SDCL 12-13-9 and clearly exceeds the purpose of a ballot explanation. It is not a statement of how Proposed Constitutional Amendment E would change existing law. Rather, it is conjecture as to possible consequences of a change in existing law. As such, it has no place in a ballot explanation appearing on the general election ballot. It is purely a statement of opinion which is more appropriate to the political campaign and education process leading up to the election.(fn4) 
[Â¶14] The circuit court was correct in concluding that the disputed portion of the ballot explanation for 1998 Proposed Constitutional Amendment E was outside of the statutory authority granted to the Attorney General under SDCL 12-13-9.
[Â¶15] The judgment is affirmed.
[Â¶16] MILLER, Chief Justice and KONENKAMP and GILBERTSON, Justices, concur with writing. 
[Â¶17] AMUNDSON, Justice, dissents.
GILBERTSON, Justice (concurring)
[Â¶18] At stake here is the impartiality and integrity of the voting booth. We fully join in the Court's opinion. We write only to stress a few additional points germane to the decision in this expedited case. 
[Â¶19] While in a generic sense, the Attorney General is the lawyer for the citizens of South Dakota in that he is an elected public official who is paid with taxpayers' funds like all public officials his duties are defined by the South Dakota Constitution and our statutes. We do not read his general duties as set forth in SDCL 1-11-1 or any other code section (exclusive of the disputed SDCL 12-13-9) to authorize the giving of a legal opinion on the face of the ballot. Thus, we are presented with the narrow question now before us as to whether the disputed language may be authorized by SDCL 12-13-9. For the reasons set forth in the Court's opinion, we conclude that it is not. This is not to say that the Legislature may not authorize such action if it chooses to do so in the future, only that it has not done so at this present time.
[Â¶20] Given the short time in which this Court must decide this appeal to allow the election to timely proceed, we are unable to determine the constitutional status of proposed Amendment E. Indeed, we should not do so as the matter has not been fully argued by the parties. However, we are cited to decisions from other courts which have upheld limitations on corporate farming in varying degrees. See Omaha Nat. Bank v. Spire, 389 NW2d 269 (Neb 1986); MSM Farms v. Spire, 927 F2d 330 (8th Cir 1991); Asbury Hospital v. Cass County, 326 US 207, 66 SCt 61, 90 LEd 6 (1945). "It is up to the people of the State of Nebraska, not the courts, to weigh the evidence and decide on the wisdom and utility of the measures adopted through the initiative and referendum process." MSM Farms, 927 F2d at 333. Therefore, we leave any questions as to the constitutionality of Amendment E for such time as it is properly brought before us to determine that issue.
[Â¶21] We would also point out that in Gormely v. Lan, 438 A2d 519 (NJ 1981) while the court quite properly recognized the Attorney General of New Jersey was vested with significant discretion in how he authored the ballot explanation, the court concluded, as we do here, that this was one of those rare cases where the court had to intervene because the explanation was not impartial.
[Â¶22] This is one of those rare cases when the Court must act to protect the integrity of the ballot box. We can take no side in the debate between corporate and family farm interests, but we must ensure that the debate remains outside the voting booth. 
[Â¶23] In summary, the people have created the process of initiative and referendum to allow them to participate directly in the drafting and creation of our Constitution and statutes. The Legislature has seen fit to assist the people in voting on proposed constitutional amendments created by initiative by authorizing the Attorney General to give a brief explanation per SDCL 12-13-9. Today we hold that this authorization does not go so far as to allow the Attorney General to declare that, "Amendment E could result in successful lawsuits against the State of South Dakota, under the U.S. Constitution."
[Â¶24] I am authorized to state that Chief Justice Miller and Justice Konenkamp join in this writing.
AMUNDSON, Justice (dissenting).
[Â¶25] I respectfully dissent in this case of first impression. It is undisputed the Attorney General is obligated to provide an explanation of the legal effect of a proposed constitutional amendment for dissemination to the electorate. This is a duty delegated by the legislature under SDCL 12-13-9. It is also undisputed, as argued by counsel for applicant/appellee at the trial court level, that the Attorney General is the lawyer for the citizens of South Dakota.
[Â¶26] Proper deference must be given to matters delegated to the discretion of the Attorney General. In Gormley v. Lan, 438 A2d 519, 525 (NJ 1981), the New Jersey Supreme Court considering a similar ballot issue stated:


In evaluating the statement drafted by the Attorney General and issued by the Secretary of State we should accord great deference to their determination not only on the basis of settled principles of law, but also because of the glaring inappropriateness of judicial management and supervision of such matters. When within the scope of legislatively-delegated authority, administrative agents' actions are presumptively valid, and where that authority confers discretion upon those agents, their actions will ordinarily not be overturned by the courts unless they are manifestly corrupt, arbitrary or misleading.
[Â¶27] As previously noted, this case involves the interpretation of a statute. The rules of statutory construction have been repeatedly set out:


The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. 
Dahn v. Trownsell, 1998 SD 36, Â¶14, 576 NW2d 535, 539 (citing Moss v. Guttormson, 1996 SD 76, Â¶10, 551 NW2d 14, 17 (citations omitted)). Clearly the language "legal effect" cannot be read out of the statute. The question then becomes what is meant by the statutory language "legal effect." The word "effect" is defined as "[t]hat which is produced by an agent or cause; result; outcome; consequence." Black's Law Dictionary 514 (6th ed. 1990). "Legal" is defined as "of or pertaining to the law." Id. at 892. Thus, the plain meaning of "legal effect" includes consequences of or pertaining to the law.(fn5)  Informing the citizens of potential litigation arising from implementation of an amendment falls within such language.
[Â¶28] Would a client/voter want his/her attorney to advise them of any pitfall perceived in the proposed constitutional amendment? I would think so. In advising a client, should an attorney disclose problems encountered in past cases or experiences? I would again respond in the affirmative. How can this Attorney General not be aware of the problems encountered by his office considering the numerous cases involving the State and SDDS, Inc. with the most recent decision being SDDS, Inc. v. State of South Dakota, et al., 1997 SD 114, 569 NW2d 289. 
[Â¶29] With this in mind, would a competent attorney advise his clients of the potential for litigation which could have an impact on their pocketbook? I would certainly think so.(fn6) 
[Â¶30] The majority decision in this case calls the explanation mere conjecture, but it certainly seems to this writer to be based on past legal decisions in cases where the Attorney General was involved, while representing the State. There is no conjecture required to see what happened in those cases. Although voters are presumed to be familiar with the issues on the ballot, all voters are not necessarily familiar with the legal effect of a proposal and all voters are not lawyers (some might say that this is fortunate) who deal with legal effect issues daily. Therefore, giving the appropriate deference to the Attorney General in this case, I would reverse the trial court. To do otherwise, in essence, installs blinders on the Attorney General when performing his statutorily delegated obligation to make full disclosure of the legal effect of a proposal to his clients, the citizens of South Dakota. 
Footnotes
1.  The full text of proposed Constitutional Amendment E is appended.
2.  SDCL 12-13-1 provides:


The secretary of state, at least twelve weeks prior to the general election, shall deliver to each county auditor a certified copy of each initiated measure, referred law, or proposed amendment to the Constitution to be voted on at the election, together with a statement, title, explanation, and recitation of the effect of a "Yes" or "No" vote to be published preceding the text of the initiative, referendum, or proposed amendment. The attorney general shall prepare each statement, title, explanation, and recitation.
3.  Alaska Stat. Â§ 15.45.180; Ariz. Rev. Stat. Ann. Â§ 19-125; Ark. Code Ann. Â§ 7-9-114; Cal. State Elections Code Â§ 9051; Colo. Rev. Stat. Â§ 1-40-106; Fla. Stat. ch. 101-161; Idaho Code Â§ 34-1809; Ill. Rev. Stat. ch. 10, para. 5/16-6; Ky. Rev. Stat. Ann. Â§ 118.415; Me. Rev. Stat. Ann. tit. 21-A, Â§ 906; Md. Code Ann. Elect. Art. 33, Â§ 16-6; Mass. Gen. Laws Ann. ch. 54, Â§ 53; Mich. Comp. Laws. Â§ 6.1474; Miss. Code Ann. Â§ 23-17-9; Mo. Rev. Stat. Â§ 116.160; Mont. Code Ann. Â§ 13-27-312; Neb. Rev. Stat. Â§ 32-1410; N.M. Stat. Ann. Â§ 1-16-7; N.D. Cent. Code Â§ 16.1-06-09; Ohio Rev. Code Ann. Â§ 3519.21; Okla. Stat. Ann. tit. 34, section 9; Or. Rev. Stat. Â§ 250.035; Utah Code Ann. Â§ 20A-7-209; Wash. Rev. Code Ann. Â§Â§ 29.27.060, 29.27.074, and 29.27.076; Wyo. Stat. Â§ 22-24-117.
4.  The Attorney General contends that two current and one prior ballot explanation provide precedent for the language disputed in Constitutional Amendment E. These explanations, however, were never challenged. 


We express no opinion on whether language in the ballot explanations for 1998 Proposed Constitutional Amendment A and 1998 Proposed Constitutional Amendment F is proper under SDCL 12-13-9. That language provides, "Amendment A may conflict with Amendment F. If both constitutional amendments pass and are found to conflict with each other, one or both could be declared void." 
Nor do we consider the propriety of a 1990 ballot explanation concerning a proposed initiated measure which said, in part, "At the present time, one such facility would be closed by the initiative, until approved by the Legislature. If this facility is legally operating upon passage of this initiative, the question of whether the owners are entitled to compensation from the State will have to be addressed."
5.  The Appellee in his brief states, "[i]t must be conceded that the questioned statement broadly fits the dictionary definitions of the words 'legal' and 'effect.'" Appellee's Brief at 12.
6.  The Appellee in his brief states, "[t]his means he must very simply explain what the amendment will do; how it will effect existing law and people's rights and obligations and how it will effect our institutions." Appellee's Brief at 13.
APPENDIX
Full text of Constitutional Amendment E:

That Article XVII of the Constitution of the State of South Dakota be amended by adding thereto new sections to read as follows:


Â§ 21. No corporation or syndicate may acquire, or otherwise obtain an interest, whether legal, beneficial, or otherwise, in any real estate used for farming in this state, or engage in farming. The term, corporation, means any corporation organized under the laws of any state of the United States or any country. The term, syndicate, includes any limited partnership, limited liability partnership, business trust, or limited liability company organized under the laws of any state of the United States or any country. A syndicate does not include general partnerships, except general partnerships in which nonfamily farm syndicates or nonfamily farm corporations are partners. The term, farming, means the cultivation of land for the production of agricultural crops, fruit, or other horticultural products, or the ownership, keeping, or feeding of animals for the production of livestock or livestock products.


Â§ 22. The restrictions in Â§ 21 of this Article do not apply to:

(1) A family farm corporation or syndicate. A family farm corporation or syndicate is a corporation or syndicate engaged in farming or the ownership of agricultural land, in which a majority of the partnership interests, shares, stock, or other ownership interests are held by members of a family or a trust created for the benefit of a member of that family. The term, family, means natural persons related to one another within the fourth degree of kinship according to civil law, or their spouses. At least one of the family members in a family farm corporation or syndicate shall reside on or be actively engaged in the day-to-day labor and management of the farm. Day-to-day labor and management shall require both daily or routine substantial physical exertion and administration. None of the corporation's or syndicate's partners, members, or stockholders may be nonresident aliens, or other corporations or syndicates, unless all of the stockholders, members, or partners of such entities are persons related within the fourth degree of kinship to the majority of partners, members, or stockholders in the family farm corporation or syndicate;



(2) Agricultural land acquired or leased, or livestock kept, fed or owned, by a cooperative organized under the laws of any state, if a majority of the shares or other interests of ownership in the cooperative are held by members in the cooperative who are natural persons actively engaged in the day-to-day labor and management of a farm, or family farm corporations or syndicates, and who either acquire from the cooperative, through purchase or otherwise, such livestock, or crops produced on such land, or deliver to the cooperative, through sale or otherwise, crops to be used in the keeping or feeding of such livestock;



(3) Nonprofit corporations organized under state non-profit corporation law;



(4) Agricultural land, which, as of the approval date of this amendment, is being farmed, or which is owned or leased, or in which there is a legal or beneficial interest, directly or indirectly owned, acquired, or obtained by a corporation or syndicate, if such land or other interest is held in continuous ownership or under continuous lease by the same such corporation or syndicate. For the purposes of this exemption, land purchased on a contract signed as of the approval date of this amendment is considered as owned on that date;



(5) Livestock, which as of the approval date of this amendment, is owned by a corporation or syndicate. For the purposes of this exemption, livestock to be produced under contract for a corporation or syndicate are considered as owned, if the contract is for the keeping or feeding of livestock and is signed as of the approval date of this amendment, and if the contract remains in effect and is not terminated by either party to the contract. This exemption does not extend beyond the term of any contract signed as of the approval date of this amendment;



(6) A farm operated for research or experimental purposes, if any commercial sales from the farm are only incidental to the research or experimental objectives of the corporation or syndicate;
(7) Land leases by alfalfa processors for the production of alfalfa;
(8) Agricultural land operated for the purpose of growing seed, nursery plants, or sod;
(9) Mineral rights on agricultural land;
(10) Agricultural land acquired or leased by a corporation or syndicate for immediate or potential nonfarming purposes, for a period of five years from the date of purchase. A corporation or syndicate may hold such agricultural land in such acreage as may be necessary to its nonfarm business operation, but pending the development of the agricultural land for nonfarm purposes, such land may not be used for farming except under lease to a family farm corporation or family farm syndicate or a non syndicate or noncorporate farm;
(11) Agricultural lands or livestock acquired by a corporation or syndicate by process of law in the collection of debts, or by any procedures for the enforcement of a lien, encumbrance, or claim thereon, whether created by mortgage or otherwise. Any lands so acquired shall be disposed of within a period of five years and may not be used for farming before being disposed of, except under a lease to a family farm corporation or syndicate, or a nonsyndicate or noncorporate farm. Any livestock so acquired shall be disposed of within six months;
(12) Agricultural lands held by state or nationally chartered bank as trustee for a person, corporation or syndicate that is otherwise exempt from the provisions of sections 21 to 24, inclusive, of this Article;
(13) A bona fide encumbrance taken for purposes of security;
(14) Custom spraying, fertilizing, or harvesting;
(15) Livestock futures contracts, livestock purchased for slaughter within two weeks of the purchase date, or livestock purchased and resold within two weeks.


Â§ 23. If a family farm corporation or family farm syndicate that has qualified under all the requirements of a family farm corporation or a family farm syndicate ceases to meet the defined criteria, it has twenty years, if the ownership of the majority of the stock of such corporation, or the majority of the ownership interest of such syndicate, continues to be held by persons related to one another within the fourth degree of kinship or their spouses, and their land holdings are not increased, to either requalify as a family farm corporation or family farm syndicate or dissolve and return to personal ownership.
Â§ 24. Any corporation or syndicate that owns agricultural land or engages in farming is required to report information necessary for the enforcement of sections 21 to 24, inclusive, of this Article to the Secretary of State on an annual basis, under rules promulgated by the Secretary pursuant to state law. The Secretary of State shall monitor such reports and notify the Attorney General of any possible violations, and any resident of the state may also notify the Attorney General of any possible violations. If a corporation or syndicate violates any provision of sections 21 to 24, inclusive, of this Article, the Attorney General shall commence an action in circuit court to enjoin any pending illegal purchase of land or livestock, or to force divestiture of land or livestock held in violation of sections 21 to 24, inclusive, of this Article. The court shall order any land held in violation of sections 21 to 24 of this Article to be divested within two years and any livestock to be divested within six months. If land so ordered by the court has not been divested within two years, the court shall declare the land escheated to the state. If the Attorney General fails to bring an action in circuit court to enforce sections 21 to 24, inclusive, of this Article, any resident of the state has standing in circuit court to sue for enforcement.