#25642-a-DG

**2010 SD 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SOUTH DAKOTA STATE FEDERATION     Applicant and Appellant,
OF LABOR AFL-CIO,

   v.

MARTY JACKLEY, South Dakota      Respondent and Appellee,
Attorney General,

   and

CHRIS NELSON, Secretary of State,     Respondent.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN L. BROWN
Judge

* * * *

STEVEN D. SANDVEN
Attorney at Law         Attorney for applicant
Sioux Falls, South Dakota      and appellant.

MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
Assistant Attorney General     Attorneys for respondent
Pierre, South Dakota       and appellee.

* * * *

CONSIDERED ON BRIEFS
July 13, 2010

OPINION FILED **07/21/10**

#25642
Gilbertson, Chief Justice

[¶1.]    The narrow issue on appeal is whether the Attorney General's ballot explanation of proposed Constitutional Amendment K complies with the requirements of SDCL 12-13-9.  The trial court upheld the ballot explanation and denied South Dakota State Federation of Labor AFL-CIO's (AFL-CIO) request for a writ of certiorari.  We affirm.

FACTS

[¶2.]    Pursuant to Article XXIII, §1 of the South Dakota Constitution, amendments to South Dakota's Constitution "may be proposed by initiative or by a majority vote of all members of each house of the Legislature."  Under this authority, the South Dakota Legislature in its 2010 session enacted Senate Joint Resolution 3 "[p]roposing and submitting to the electors at the next general election an amendment to Article VI of the Constitution of the State of South Dakota, relating to the right of individuals to vote by secret ballot."  Article VI of the South Dakota Constitution is the South Dakota Bill of Rights.  The text of proposed Constitutional Amendment K, which will become §28 of Article VI if passed, provides:

> The rights of individuals to vote by secret ballot is fundamental. If any state or federal law requires or permits an election for public office, for any initiative or referendum, or for any designation or authorization of employee representation, the right of any individual to vote by secret ballot shall be guaranteed.

[¶3.]    On May 12, 2010, the Attorney General delivered an explanation of proposed Constitutional Amendment K to the Secretary of State.  SDCL 12-13-9.  It provides:

ATTORNEY GENERAL
2010 BALLOT EXPLANATION
CONSTITUTIONAL AMENDMENT K

*Title:* An Amendment to Article VI of the South Dakota Constitution relating to the right of individuals to vote by secret ballot.

*Explanation:*

The proposed amendment to the Constitution would guarantee a right to vote by secret ballot to prevent others from knowing how a person voted. This right would apply to elections of public officers, adoption of initiated or referred measures, and elections to designate or authorize employee representation, such as elections concerning unions.

A vote "Yes" is for guaranteeing a right to vote by secret ballot.

A vote "No" is against the constitutional amendment.

[¶4.]     The AFL-CIO filed an application and affidavit for writ of certiorari challenging the Attorney General's ballot explanation for proposed Constitutional Amendment K and asking that proposed Constitutional Amendment K be omitted from the ballot for the November 2, 2010 general election. The trial court concluded that the Attorney General did not exceed his statutory authorization under SDCL 12-13-9 and upheld the Attorney General's ballot explanation for proposed Constitutional Amendment K. Accordingly, the trial court denied AFL-CIO's request for a writ of certiorari.

ANALYSIS AND DECISION

[¶5.]     The full text of a proposed constitutional amendment is not printed on the election ballot. Instead, "[t]he title, explanation, recitation, place for voting, and statement as required by this chapter shall be printed on the ballot in lieu of the

law, measure, constitutional amendment, or other question submitted to a vote of

the people." SDCL 12-13-11. "The attorney general shall prepare each statement,

title, explanation, and recitation." SDCL 12-13-1.

[¶6.]          Prior to July 1, 2006, SDCL 12-13-9 provided:

> Before the fourth Tuesday in July, the attorney general shall
> deliver to the secretary of state the statement, the title, the
> explanation, and a clear and simple recitation of the effect of a
> "Yes" or "No" vote. The explanation shall state succinctly the
> purpose and legal effect of the proposed amendment to the
> Constitution, the initiated measure, or the referred law. The
> explanation shall be a clear and simple summary of the issue
> and may not exceed two hundred words in length. On the
> printed ballots, the title shall be followed by the explanation
> and the explanation shall be followed by the recitation.

[¶7.]          Our case law examined this statute to determine what it required and

what it disallowed:

> The explanation must be factually accurate, legally accurate,
> concise, must not address collateral, theoretical or potential
> consequences of approval or disapproval by the voters, must not
> be a statement of personal opinion and must not attempt to
> advocate for or against the ballot question. *See generally
> Hoogestraat v. Barnett,* 1998 SD 104, 583 NW2d 421. However
> within this legal framework, the Attorney General is granted
> discretion as to how to author the ballot statement. *Gormley v.
> Lan,* 88 NJ 26, 438 A2d 519, 525 (1981). Moreover this Court's
> function is a limited one. We merely determine if the Attorney
> General has complied with his statutory obligations and we do
> not sit as some type of literary editorial board.

Schulte v. Long, 2004 SD 102, ¶11, 687 NW2d 495, 498. The purpose of a ballot

explanation prior to July 1, 2006, was to identify an amendment to an informed

electorate rather than to educate the electorate. *Hoogestraat,* 1998 SD 104, ¶11,

583 NW2d at 424.

[¶8.]          In apparent response to our decisions in *Hoogestraat* and *Schulte*, the

Legislature amended SDCL 12-13-9 in 2006 and 2007. 2006 SD Sess L ch 67, §3;

2007 SD Sess L ch 14, §2; 2007 SD Sess L ch 77, §1. Until July 1, 2010

SDCL 12-13-9 provides:

> Before the third Tuesday in May, the attorney general shall deliver to the secretary of state an attorney general's statement for each proposed amendment to the Constitution, each initiated measure, and any referred measure from an odd year. The attorney general's statement for each referred measure from an even year shall be delivered to the secretary of state before the second Tuesday in July. The attorney general's statement shall be written by the attorney general and shall consist of a title, an explanation, and a clear and simple recitation of the effect of a "Yes" or "No" vote. The title shall be a concise statement of the subject of the proposed amendment, initiated measure, or referred measure authored by the attorney general, who may adopt the title used by the petition sponsors during the circulation process if that title is legally sufficient. The explanation shall be an objective, clear, and simple summary to educate the voters of the purpose and effect of the proposed amendment to the Constitution, the initiated measure, or the referred law. The attorney general shall include a description of the legal consequences of the proposed amendment, the initiated measure, or the referred law, including the likely exposure of the state to liability if the proposed amendment, the initiated measure, or the referred law is adopted. The explanation may not exceed two hundred words in length. On the printed ballots, the title shall be followed by the explanation and the explanation shall be followed by the recitation.

The 2009 Legislature also amended SDCL 12-13-9. That amendment is effective

July 1, 2010. The text of SDCL 12-13-9, effective July 1, 2010, as well as the text of

a new section, SDCL 12-13-25.1 is appended.

[¶9.] The 2006 and 2007 amendments to SDCL 12-13-9 clarify the scope of

the authority delegated to the Attorney General when preparing ballot

explanations. SDCL 12-13-9 now specifically requires that the Attorney General's

statement be "written by the attorney general" and the title be "authored by the

attorney general." The purpose of the explanation is no longer to identify the amendment to an informed electorate rather than to educate it. *Schulte*, 2004 SD 102, ¶12, 687 NW2d at 498. SDCL 12-13-9 now requires that the explanation be an "objective, clear, and simple summary *to educate* the voters of the purpose and effect of the proposed amendment[.]" (Emphasis added). And, while the language of SDCL 12-13-9 prior to 2006 allowed for a summary of the legal effect of an amendment, that summary could not include "collateral, theoretical or potential consequences which may or may not occur." *Hoogestraat*, 1998 SD 104, ¶12, 583 NW2d at 424. Now, however, the Attorney General "shall include a description of the legal consequences of the proposed amendment . . . including the *likely* exposure of the state to liability *if* the proposed amendment . . . is adopted." SDCL 12-13-9. (Emphasis added). SDCL 12-13-9 sets forth the elements the Attorney General is required to address in a ballot statement. Within this legal framework, however, the Attorney General "is granted discretion as to how to author the ballot statement." *Schulte,* 2004 SD 102, ¶11, 687 NW2d at 498. This Court's function is limited. *Id.* "We merely determine if the Attorney General has complied with his statutory obligations and we do not sit as some type of literary editorial board." *Id.*

A

[¶10.]     At issue in this case is whether the Attorney General's ballot explanation of proposed Constitutional Amendment K complies with the requirements set forth in SDCL 12-13-9. Despite this narrow issue, the AFL-CIO urged the trial court to order the Attorney General and Secretary of State to strike proposed Constitutional Amendment K from the ballot. On appeal, the AFL-CIO

urges this Court to decide the legality and constitutionality of proposed

Constitutional Amendment K in light of federal preemption law.

[¶11.]     Questions regarding the constitutionality of proposed constitutional

amendments are left "for such time as it is properly brought before us to determine

the issue." *Hoogestraat*, 1998 SD 104, ¶20, 583 NW2d at 425 (Gilbertson, J.,

concurring, joined by Miller, C. J. and Konenkamp, J.).  Until then it is up to the

people of South Dakota, and not the courts, to weigh the evidence and decide on the

wisdom and utility of the issue.  *Id.*

[¶12.]     This Court has long held:

> The proposed amendment is on its way to the electors.  Can this court, at this time, impede its progress?  Can it be called upon to anticipate conditions which may never exist?  Can it interpose its process between the legislature and electors, who are alone clothed with power to modify the fundamental law, before both have acted, and while the matter is pending and incomplete?  The powers of the state government are divided into three distinct departments, -the legislative, executive, and judicial.  The powers and duties of each are prescribed by the constitution. Const. art. 2.  Power to amend the constitution belongs exclusively to the legislature and electors.  It is legislation of the most important character.  This court has power to determine what such legislation is, what the constitution contains, but not what it should contain.  It has power to determine what statutory laws exist, and whether or not they conflict with the constitution; but it cannot say what laws shall or shall not be enacted.  It has the power, and it is its duty, whenever the question arises in the usual course of litigation, wherein the substantial rights of any actual litigant are involved, to decide whether any statute has been legally enacted, or whether any change in the constitution has been legally effected, but it will hardly be contended that it can interpose in any case to restrain the enactment of an unconstitutional law.  Mississippi v. Johnson, 4 Wall.  500.  If the legislature cannot be enjoined when engaged in the enactment of unconstitutional statutes, it and the electors cannot be enjoined when engaged in an unwarranted attempt to amend the constitution.

State ex rel Cranmer v Thorson, 9 SD 149, 154-155, 68 NW 202, 203-204 (1896).

[¶13.]    The *Cranmer* court refrained from expressing any opinion upon the effect of the joint resolution as a proposed constitutional amendment.  This Court also refrains from expressing any opinion on the constitutionality of proposed Constitutional Amendment K until the issue is properly before us.

B

[¶14.]    The AFL-CIO contends that the Attorney General's explanation regarding proposed Constitutional Amendment K failed to provide "an objective, clear, and simple summary to educate the voters of the purpose and effect of the proposed amendment" as required by SDCL 12-13-9.

[¶15.]    Proposed Constitutional Amendment K, by its plain language, guarantees an individual the fundamental right to vote by secret ballot "[i]f any state or federal law permits an election for public office, for any initiative or referendum, or for any designation or authorization of employee representation[.]" The Attorney General's statement explains that this proposed amendment "would guarantee a right to vote by secret ballot to prevent others from knowing how a person voted" and "would apply to elections of public officers, adoption of initiated or referred measures, and elections to designate or authorize employee representation, such as elections concerning unions."

[¶16.]    SDCL 12-13-9 requires the Attorney General to write an objective, clear, and simple summary to educate the voters of the purpose and effect of the proposed amendment.  In *Schulte*, 2004 SD 102, ¶16, n3, 687 NW2d at 499-500, (citations omitted) we defined purpose as that "which one sets before him to obtain

or accomplish" and effect as "that which is produced by an agent or cause; result; outcome; consequence."

[¶17.]     The Attorney General's explanation offers an objective summary of the language of proposed Constitutional Amendment K that educates the voters of its purpose and effect.  It explains the effect of a secret ballot and the instances it would apply if proposed Constitutional Amendment K is passed.  While the explanation does not mirror the language of proposed Constitutional Amendment K, it objectively educates the voters of its purpose and effect.

[¶18.]     The AFL-CIO devotes much of its argument to its belief that federal law preempts proposed Constitutional Amendment K and that the Attorney General should have explained the principle of waiver of the right to vote by secret ballot.  It believes the Attorney General should have said more.  In *Schulte* however, we noted that this Court:

> cannot be concerned with what the Attorney General should have said or could have said or might have said or what is implied or suggested by what he did say.  Rather we must focus on the language chosen[.]

*Schulte*, 2004 SD 102 ¶18, 687 NW2d at 500.

C

[¶19.]     The AFL-CIO also contends that the Attorney General's ballot explanation does not include "a description of the legal consequences of the proposed amendment. . . . including the likely exposure of the state to liability if the proposed amendment is adopted" as required by SDCL 12-13-9.

[¶20.]     In *Hoogestraat*, 1998 SD 104, ¶13, 583 NW2d at 424, we held that the Attorney General's statement that Proposed Constitutional Amendment E "could

result in successful lawsuits against the State of South Dakota under the U.S. Constitution" went beyond the narrow authority granted by SDCL 12-13-9, exceeded the purpose of a ballot explanation, and was purely a statement of opinion more appropriate to the political campaign and election process leading up to the election. The concurrence by three Justices agreed that the language was not authorized by SDCL 12-13-9, but noted "[t]hat is not to say that the Legislature may not authorize such action if it chooses to do so in the future, only that it has not done so at this present time." *Hoogestraat,* 1998 SD 104, ¶19, 583 NW2d 421, 425 (Gilbertson, J. concurring, joined by Miller, C. J. and Konenkamp, J.).

[¶21.] Since *Hoogestraat* was decided in 1998, the Legislature has expanded the narrow authority originally granted to the Attorney General by SDCL 12-13-9. A ballot explanation now educates the voters, in an objective manner, of "the purpose and effect of the proposed amendment to the Constitution." SDCL 12-13-9. In addition, in accordance with the suggestion in *Hoogestraat,* SDCL 12-13-9 now requires that the Attorney General "shall include a description of the legal consequences of the proposed amendment . . . including the likely exposure of the state to liability if the proposed amendment . . . is adopted."

[¶22.] The Attorney General is a constitutional officer whose duties require that he or she act as the State's lawyer. *See generally* SDCL 1-11-1. Included in that is the obligation "whenever in his judgment the welfare of the state demands, to appear for the state and prosecute or defend, in any court or before any officer, any cause or matter, civil or criminal, in which the state may be a party or interested…" SDCL 1-1-1(2). We have viewed the ethical considerations of an

attorney's calling as requiring the attorney, within the bounds of the law, to exercise independent judgment on behalf of the client. *See e.g.* Matter of Estate of Schuldt, 428 NW2d 251, 259 (SD 1988).

[¶23.] The Attorney General is charged with writing ballot statements. SDCL 12-13-9. Whether the Attorney General must include a statement of the likelihood of exposure of the state to liability, is initially the discretionary determination of the Attorney General. In the judicial context we have held that an abuse of that discretion "refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." Kaiser v. University Physicians Clinic, 2006 SD 95, ¶29, 724 NW2d 186, 194. It is dependent on the facts and legal issues of each individual case. There is no black letter test of when the Attorney General is required to state there is the likelihood of future litigation if a proposed amendment passes, and that it is likely that the state will be exposed to liability if the proposed amendment is adopted.

[¶24.] The legal consequence of whether there is a probability of litigation including likely exposure to liability is broader than whether someone might threaten, let alone will, sue the state over a proposed constitutional amendment. That is always a possibility; our legal system does not preclude it. Otherwise such a test would mandate a boilerplate admonition in every Attorney General ballot statement that litigation is a possibility.

[¶25.] While SDCL 12-13-9 does require certain acts upon the part of the Attorney General in certain instances, such acts are premised on his initial legal

opinion which is a discretionary one. SDCL 2-14-2.1 defines the term "shall" and provides:

> As used in the South Dakota Codified Laws to direct any action, the term shall, manifests a mandatory directive and does not confer any discretion in carrying out the action so directed.

It is clear that the word "shall" is a mandatory directive as found in the definition in SDCL 2-14-2.1. However, the word is not to be viewed in isolation. In construing the applicability of the word "shall" we have held that "[s]tatutes and court rules must be construed in their entirety. The effect of the word 'shall' may be determined by the balance of the text of the statute or rule." Truman v. Griese, 2009 SD 8, ¶28, 762 NW2d 75, 82 (*quoting* Discover Bank v. Stanley, 2008 SD 111, ¶21, 757 NW2d 756, 762-63.) The word "shall" is to be construed with the term "legal consequences" in SDCL 12-13-9. Legal consequences is a general term not readily capable of a specific definition. It is not defined anywhere in our code or case law. Moreover, we also must consider the text and spirit of the amended statute. In deciding what to state and how to state it, the Attorney General is limited to 200 words. We have repeatedly held that how the Attorney General says it is up to his professional discretion as attorney for the State. This Court does not sit as an editorial review board. Thus, if the Attorney General by the exercise of his professional legal judgment in his discretion determines that the legal consequences of this ballot question would cause "likely exposure of the state to liability if the proposed amendment is adopted" he must so state in the ballot explanation. Only in that limited sense is the SDCL 12-13-9 mandatory.

[¶26.]     The AFL-CIO seeks an advisory opinion from this Court directing the re-drafting of the ballot explanation and striking proposed Constitutional Amendment K from the ballot altogether. Requests to strike a proposed amendment from the ballot are not appropriate in this proceeding. *Hoogestraat,* 1998 SD 104, ¶20, 583 NW2d at 425 (Gilbertson, J., concurring, joined by Miller, C. J. and Konenkamp, J.). The trial court was correct in concluding that the Attorney General did not abuse his discretion in his drafting of the ballot explanation.

[¶27.]     We affirm the judgment and order denying writ of certiorari.

[¶28.]     KONENKAMP, ZINTER, SEVERSON, Justices, and MILLER, Retired Justice, concur.

[¶29.]     MILLER, Retired Justice, sitting for MEIERHENRY, Justice, disqualified.

APPENDIX

Effective July 1, 2010, SDCL 12-13-9 deals with the Attorney General's ballot statement for amendments to the Constitution proposed by the Legislature and referred measures. It provides:

> Before the third Tuesday in May, the attorney general shall deliver to the secretary of state an attorney general's statement for each ~~proposed~~ amendment to the Constitution~~, each initiated measure,~~ <u>proposed by the Legislature,</u> and any referred measure from an odd year. The attorney general's statement for each referred measure from an even year shall be delivered to the secretary of state before the second Tuesday in July. The attorney general's statement shall be written by the attorney general and shall consist of a title, an explanation, and a clear and simple recitation of the effect of a "Yes" or "No" vote. The title shall be a concise statement of the subject of the proposed amendment~~, initiated measure,~~ or referred measure authored by the attorney general~~, who may adopt the title used by the petition sponsors during the circulation process if that title is legally sufficient~~. The explanation shall be an objective, clear, and simple summary to

educate the voters of the purpose and effect of the proposed amendment to the Constitution, ~~the initiated measure,~~ or the referred law. The attorney general shall include a description of the legal consequences of the proposed amendment, ~~the initiated measure,~~ or the referred law, including the likely exposure of the state to liability if the proposed amendment, ~~the initiated measure,~~ or the referred law is adopted. The explanation may not exceed two hundred words in length. On the printed ballots, the title shall be followed by the explanation and the explanation shall be followed by the recitation.

This Act is effective July 1, 2010. The provisions of this Act do not apply to any initiative petition or initiated constitutional amendment petition filed with the secretary of state for the 2010 general election.

2009 SD Sess L ch 64, §10, §11. (Overstrikes and underline provided).

Also effective July 1, 2010 is a new section, SDCL 12-13-25.1, which

deals with the Attorney General's ballot statement in the case of an initiative or

initiated amendment to the Constitution. SDCL 12-13-25.1 provides:

Following receipt of the written comments of the director of the Legislative Research Council, the sponsors shall submit a copy of the initiative or initiated amendment to the Constitution in final form, to the attorney general. The attorney general shall prepare an attorney general's statement which consists of a title and explanation. The title shall be a concise statement of the subject of the proposed initiative or initiated amendment to the Constitution. The explanation shall be an objective, clear, and simple summary to educate the voters of the purpose and effect of the proposed initiated measure or initiated amendment to the Constitution. The attorney general shall include a description of the legal consequences of the proposed amendment or initiated measure, including the likely exposure of the state to liability if the proposed amendment or initiated measure is adopted. The explanation may not exceed two hundred words in length. The attorney general shall file the title and explanation with the secretary of state and shall provide a copy to the sponsors within sixty days of receipt of the initiative or initiated amendment to the Constitution.

If the petition is filed as set forth in § 2-1-2, the attorney general shall deliver to the secretary of state before the third Tuesday in May a simple recitation of a "Yes" or "No" vote. On the printed ballots, the title shall be followed by the explanation and the explanation shall be followed by the recitation.

2009 SD Sess L ch 24, §2.