#28379-a-SLZ
**2018 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JONI JOHNSON, SOUTH DAKOTA
BIOTECHNOLOGY ASSOCIATION, and
PHARMACEUTICAL RESEARCH AND
MANUFACTURERS OF AMERICA,                    Applicants and Appellants,

         v.

MARTY J. JACKLEY, in his
Official Capacity as South Dakota
Attorney General,                            Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

JON HANSEN
LISA M. PROSTROLLO
MATTHEW S. MCCAULLEY
Redstone Law Firm LLP                        Attorneys for applicants and
Sioux Falls, South Dakota                    appellants.

MARTY J. JACKLEY
Attorney General

STEVEN R. BLAIR
Assistant Attorney General                   Attorneys for respondent and
Pierre, South Dakota                         appellee.

* * * *

CONSIDERED ON BRIEFS ON
MARCH 19, 2018
OPINION FILED **05/09/18**

#28379

ZINTER, Justice

[¶1.]        Joni Johnson, the South Dakota Biotechnology Association, and the

Pharmaceutical Research and Manufacturers of America (collectively, "Appellants")

requested a writ of certiorari to challenge an Attorney General's ballot explanation

of a proposed initiated measure.  The proposed measure would limit the price state

agencies may pay for prescription drugs.  Appellants alleged the Attorney General's

explanation did not comply with the requirements of SDCL 12-13-25.1.  The circuit

court denied the writ, and Appellants appeal.  We affirm.

*Facts and Procedural History*

[¶2.]        In South Dakota, a proposed initiated measure's full text does not

appear on the ballot.  Instead, the Attorney General prepares, and the Secretary of

State includes, a statement that contains a "title," an "explanation," and a

description of "legal consequences."  SDCL 12-13-25.1.  Under the statute:

> 1.  The *title* must be "a concise statement of the subject of the
> proposed initiative";
>
> 2.  The *explanation* must be "an objective, clear, and simple
> summary to educate the voters of the purpose and effect of the
> proposed initiative or initiated [measure]"; and
>
> 3.  The *legal consequences* must be "a description of the legal
> consequences of the proposed initiative . . . , including the likely
> exposure of the state to liability if the proposed initiative. . . is
> adopted."

*See id.*  Additionally, the explanation may not exceed two hundred words.  *Id.*

[¶3.]        The proposed measure in this case, according to its title, is an act to

"establish a prescription drug pricing law enabling a State Agency to pay the same

or lower prices for prescription drugs as the prices paid by the United States

Department of Veterans Affairs."  The first three sections prohibit state agencies

-1-

#28379

from entering into agreements with drug manufacturers for the purchase of prescription drugs unless the net cost is equal to or less than that paid by the United States Department of Veterans Affairs. Section 4 requires the promulgation of implementing regulations, and section 5 purports to provide legal standing to the proponents if the proposal is approved and challenged in post-election court proceedings.[1]

---

1. The complete text of sections 1 through 5 is as follows:

> Section 1. Notwithstanding any other provision of law, a State Agency may not enter into any agreement with the manufacturer of any drug for the purchase of a prescribed drug or agree to pay, directly or indirectly, for a prescribed drug, unless the net cost of the drug, inclusive of cash discounts, free goods, volume discounts, rebates, and all other discounts or credits, as determined by the purchasing department, agency, or entity is the same as or less than the lowest price paid for the same drug by the United States Department of Veterans Affairs.
>
> Section 2. The price ceiling described in section 1 of this Act applies to all programs in which the State or any of its agencies is the ultimate payer for the drug, even if it does not purchase the drug directly.
>
> Section 3. In addition to any agreement for any cash discounts, free goods, volume discounts, rebates, and any other discounts or credits already in place for these programs, the State and its agencies shall enter into additional agreements with drug manufacturers for further price reduction so the net cost of the drug, as determined by the purchasing department, agency, or entity, is the same as or less than the lowest price paid for the same drug by the United States Department of Veterans Affairs.
>
> Section 4. The Bureau of Administration shall adopt rules, pursuant to chapter 1-26 to obtain information about prescription drug prices, credits, discounts, rebates, and other price advantages for the purpose of determining the lowest price at which a prescription drug is being offered to the United States Department of Veterans Affairs and to establish the lowest price at which prescription drugs may be purchased by any State Agency. Any State agency may seek waivers of federal law, rule or regulation necessary to implement this Act.

(continued . . .)

[¶4.] On August 22, 2017, the Attorney General submitted the following statement for the proposed measure:

> *Title*:
>
> An initiated measure establishing a cap on the price a State agency may pay for a prescription drug.
>
> *Explanation*:
>
> This measure limits the amount that a State agency may pay for a prescription drug. Under the measure, a State agency may not directly or indirectly pay more for a prescription drug than the U.S. Department of Veterans Affairs pays for that same drug.
>
> The measure requires the State Bureau of Administration to enact rules establishing prescription drug prices payable by State agencies.

[¶5.] Appellants objected to the explanation and filed an application for a writ of certiorari to challenge it. Appellants argued that although the explanation summarized the measure's "purpose," it did not summarize the "effect" or "legal consequences" of sections 1-4. They also argued it did not summarize any "purpose, effect, or legal consequence" of section 5.

[¶6.] The circuit court denied the writ. The court noted there was no dispute the explanation summarized the proposed measure's purpose—to limit "the price to be paid by state agencies for prescription drugs[.]" The court concluded that the explanation also expressed the "effect" and "legal consequences" of sections 1-4

_____

(. . . continued)

Section 5. If any provision of this Act is challenged in court, the committee of individuals responsible for circulating the petition to qualify this Act for the ballot are deemed to have a direct and personal stake in defending this Act from constitutional or other challenges. If the Act is challenged, committee members shall be deemed to have legal standing to assert the member's direct and personal stake by defending the Act's validity.

because the purpose, effect, and legal consequences were the same in this case. Although the explanation did not summarize section 5, the court ruled an explanation was unnecessary because section 5 was a collateral provision that could not be simply summarized in the word limit allowed under SDCL 12-13-25.1. Relying on this Court's precedents citing *Gormley v. Lan*, 438 A.2d 519 (N.J. 1981), the court expressed the view that *Gormley* deference precluded court intervention unless the Attorney General's acts were manifestly corrupt, arbitrary, or misleading. Appellants appeal each of these rulings.

*Decision*

[¶7.]	Certiorari is "granted only in very limited circumstances." *State ex rel. Johnson v. Pub. Utils. Comm'n of S.D.*, 381 N.W.2d 226, 230 (S.D. 1986). "[T]he review . . . cannot be extended further than to determine whether the inferior court, tribunal, board, or officer . . . has regularly pursued the authority of such court, tribunal, board, or officer." SDCL 21-31-8. In making that determination, we "do not review whether the [officer's] decision is right or wrong." *Adolph v. Grant Cty. Bd. of Adj't*, 2017 S.D. 5, ¶ 7, 891 N.W.2d 377, 381. Rather, when an officer has jurisdiction, his acts will be sustained unless he did "some act forbidden by law or neglected to do some act required by law." *Peters v. Spearfish ETJ Planning Comm'n*, 1997 S.D. 105, ¶ 6, 567 N.W.2d 880, 883.

[¶8.]	Thus, in ballot explanation cases, we must determine whether the Attorney General's explanation satisfies the legal requirements of SDCL 12-13-25.1: the explanation must include the proposed measure's purpose, effect, and legal consequences. *See Ageton v. Jackley*, 2016 S.D. 29, ¶ 14, 878 N.W.2d 90, 94. In

making that determination, we "cannot be concerned with what the Attorney General should have said or could have said or might have said or what is implied or suggested by what he did say.  Rather we must focus on the language chosen." *Id.* ¶ 25, 878 N.W.2d at 96.  Ultimately, explanations cannot be set aside merely because they could be better.  They need only be *adequate*.  *Id.*; SDCL 12-13-9.2.

[¶9.]　　　　Before reviewing the adequacy of this explanation, we first consider Appellants' argument regarding the deference that must be given to the Attorney General's choice of language.  Appellants contend the circuit court erroneously applied *Gormley's* standard.  *See Gormley*, 438 A.2d at 525 ("[W]here . . . authority confers discretion upon [administrative] agents, their actions will ordinarily not be overturned by the courts unless they are manifestly corrupt, arbitrary or misleading.").  Appellants contend the *Gormley* standard is overly deferential and ignores the statutory requirements in SDCL 12-13-25.1.  We disagree.

[¶10.]　　　　Although ballot explanations must satisfy the threshold requirements of SDCL 12-13-25.1, we have repeatedly emphasized that the Attorney General must be given "discretion as to how to author" them.  *S.D. State Fed'n of Labor AFL-CIO v. Jackley*, 2010 S.D. 62, ¶ 9, 786 N.W.2d 372, 376 (construing parallel statute); *Ageton*, 2016 S.D. 29, ¶ 23, 878 N.W.2d at 96.  That is because the Attorney General's duty is administrative in nature, and "[u]nder the separation-of-powers doctrine, a court may not 'exercise or participate in the exercise of functions which are essentially legislative or administrative.'"  *State, Dep't of Game, Fish & Parks v. Troy Twp.*, 2017 S.D. 50, ¶ 14, 900 N.W.2d 840, 846 (quoting *Fed. Radio Comm'n v. Gen. Elec. Co.*, 281 U.S. 464, 469, 50 S. Ct. 389, 390, 74 L. Ed. 969

(1930)). Thus, as stated shortly after ballot explanations first became required, the Attorney General must have "significant discretion" in performing the statutory duty of drafting ballot explanations. *Hoogestraat v. Barnett*, 1998 S.D. 104, ¶ 21, 583 N.W.2d 421, 425 (Gilbertson, J., concurring) (pointing out that *Gormley* "properly" recognized the discretion must be significant).

[¶11.]    Discretion in this sense permits the exercise of judgment in choosing between competing considerations.

> The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

*Montana-Dakota Utils. Co. v. Parkshill Farms*, LLC, 2017 S.D. 88, ¶ 19, 905 N.W.2d 334, 341 (quoting *Basin Elec. Power Coop. v. Payne*, 298 N.W.2d 385, 388 (S.D. 1980)). The *Gormley* standard fits comfortably within this understanding. Moreover, we have repeatedly referenced *Gormley* in emphasizing the highly discretionary nature of the Attorney General's duty. *See Ageton*, 2016 S.D. 29, ¶ 25, 878 N.W.2d at 96; *AFL-CIO*, 2010 S.D. 62, ¶ 7, 786 N.W.2d at 375; *Schulte v. Long*, 2004 S.D. 102, ¶¶ 11, 26, 687 N.W.2d 495, 498, 501-02 (majority opinion, and Zinter, J., concurring); *Hoogestraat*, 1998 S.D. 104, ¶ 21, 583 N.W.2d at 425 (Gilbertson, J., concurring). Therefore, in determining whether this explanation satisfied SDCL 12-13-25.1's requirements, the circuit court did not err in utilizing a standard of review that considered whether the Attorney General's actions were "manifestly corrupt, arbitrary or misleading." *See Gormley*, 438 A.2d at 525.

[¶12.]       We next turn to Appellants' underlying argument that the explanation fails to conform to the requirements of SDCL 12-13-25.1. Appellants first contend that although the explanation adequately summarizes the purpose of sections 1-4, it does not summarize the effect of those sections. In ballot explanation cases, purpose is that "which one sets before him to obtain or accomplish," and effect is that "which is produced by an agent or . . . result[.]" *AFL-CIO*, 2010 S.D. 62, ¶ 16, 786 N.W.2d at 377. Appellants contend this explanation fails to explain the effect of the proposed measure because purpose and effect "must be something different," and although this explanation addresses purpose, it fails to mention the sections' effect.

[¶13.]       Appellants' contention fails to recognize that the purpose and effect of a proposed law can be the same. We acknowledge that in some cases, a proposed measure's purpose and effect may be different. For example, in *Ageton*, the alleged purpose of that measure was to end short-term lending in the state, and the measure's effect was to simply cap interest rates at 36%. 2016 S.D. 29, ¶ 7, 878 N.W.2d at 92. But here, as the circuit court observed, the purpose and effect of sections 1-4 are the same. Both that which the proponents seek to obtain and the result of the proposal is what the explanation indicates—a limitation on the amount state agencies may pay for prescription drugs to that paid by the United States Department of Veterans Affairs. We acknowledge that Appellants have suggested additional potential effects of the proposed measure. But the Attorney General is not required to "include every practical or possible effect of each initiated measure,"

*id.* ¶ 25, 878 N.W.2d at 96, and Appellants have failed to demonstrate that their suggested effects are anything more than possibilities.[2]

[¶14.] Appellants next contend the explanation fails to address the legal consequences of sections 1-4. We have previously stated that in describing the legal consequences of a proposed measure, the Attorney General is acting as legal counsel for the State. Therefore, it is up to the Attorney General's "professional discretion" and "professional legal judgment" as an attorney to assess and describe the "likely" legal consequences of a particular measure. *AFL-CIO*, 2010 S.D. 62, ¶ 25, 786 N.W.2d at 379. Here, Appellants' challenge is based only on "possible litigation scenarios" arising from many of the same speculative effects outlined in footnote 2. Additionally, Appellants have not identified any facts or law suggesting those possible legal claims are sufficiently meritorious to likely be asserted. Appellants have not established that the Attorney General abused his discretion.

---

2. Appellants' suggested effects are facially speculative. Appellants contend the measure *could*:

> (1) raise the price of prescription drugs for those with private insurance *if* prescription drug suppliers raise prices to recoup losses, (2) lead to drug shortages for vulnerable populations such as the elderly, low-income children, and low-income parents that rely on Medicaid for coverage *if* prices are set so low that drug companies will not sell drugs to the state Medicaid program, (3) lead to shortages of prescription drugs for state employees reliant on the State of South Dakota's self-funded health insurance plan *if* the state is unable to negotiate a low enough price from drug companies, or (4) *incentivize* individual pharmaceutical companies to stop giving steep rebates and discounts to the Department of Veterans Affairs in order to charge higher prices to state agencies.

(Emphasis added.)

[¶15.]     Appellants finally contend the explanation fails to provide any explanation of section 5, which purports to grant standing to the proponents if the measure passes and is subsequently challenged in court. However, we agree with the circuit court that an explanation was not required. Ballot explanations may not exceed two hundred words, and the Attorney General is not required to include every possible or even practical effect of each initiated measure. *Ageton,* 2016 S.D. 29, ¶ 25, 878 N.W.2d at 96. Here, section 5 is a contingent, legal-standing provision that is wholly collateral to the proposed measure's purpose and effect of limiting drug prices. Additionally, legal standing is a litigation issue that affects the personal interests of the proponents rather than the electorate as a whole.

[¶16.]     "[F]ocus[ing] on the language chosen" by the Attorney General, see *id.*, we cannot say that he failed to carry out his statutory duty to provide a ballot explanation meeting the requirements of SDCL 12-13-25.1. We affirm.

[¶17.]     GILBERTSON, Chief Justice, and SEVERSON, KERN, and JENSEN, Justices, concur.