STATE of Missouri, ex rel., HUMANE SOCIETY OF MISSOURI, Relator,

v.

Honorable Jon E. BEETEM, Respondent.

No. WD 72661.

Missouri Court of Appeals, Western District.

Aug. 11, 2010.

Heidi D. Vollet, for Relator.

Charles W. Hatfield, for Respondent.

Before Writ Division: JAMES M. SMART, JR., Presiding Judge, VICTOR C. HOWARD, Judge and JAMES E. WELSH, Judge.

VICTOR C. HOWARD, Judge.

This discovery dispute arrives at the court of appeals in the context of a challenge to Secretary of State Robin Carnahan's (the Secretary) ballot summary statement for an initiative petition proposed by the Humane Society of Missouri (HSMO). HSMO is part of a coalition group called Missourians for Protection of Dogs (MPD) that is advocating a statewide ballot measure to enact a new statutory provision to be known as the "Puppy Mill Cruelty Prevention Act." [1] Relator seeks a

1. The other three members of MPD are the   Missouri Alliance for Animal Legislation, the

writ of prohibition from this court forbidding the compulsory disclosure of materials known as "Document 10." This court issued a preliminary writ and then heard arguments. Because of the timeliness of the issue, we made our substantive ruling immediately after oral argument. We now issue our full opinion.

When an initiative petition for a statutory change is proposed, it is the responsibility of the Secretary to certify the official ballot title of the initiative. § 116.180.[2] The ballot title consists of two parts: a summary statement and a fiscal note summary.[3] § 116.010(4). The summary statement describing the initiative must not exceed 100 words and "shall be in the form of a question using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure." § 116.334. This summary statement is attached to the petition as it circulates for signatures and appears on the ballot at Election Day. § 116.010(4).

On December 28, 2009, the Secretary certified the ballot title for HSMO's initiative, which included the summary statement reading as follows:

Shall Missouri law be amended to:

- require large-scale dog breeding operations to provide each dog under their care with sufficient food, clean water, housing and space; necessary veterinary care; regular exercise and adequate rest between breeding cycles;
- prohibit any breeder from having more than 50 breeding dogs for the purpose of selling their puppies as pets; and

- create a misdemeanor crime of "puppy mill cruelty" for any violations?

Missouri citizen and taxpayer Karen Strange filed a Petition for Declaratory Judgment and Injunctive Relief against the Secretary in the Circuit Court of Cole County challenging the Secretary's summary statement as being "insufficient and unfair" for a variety of reasons. HSMO was allowed to intervene as an additional defendant. Pertinent to this appeal, Strange is alleging in the circuit court that use of the phrase "puppy mill cruelty" in the third bullet point of the summary is "inherently prejudicial and misleading" because the phrase is "derogatory." Strange is asking the circuit court to rewrite the summary and has submitted alternate language in accordance with section 116.190, RSMo Cum.Supp.2009, which allows a citizen to challenge ballot language.

The Secretary and HSMO both deny the term is prejudicial. The Secretary points to the fact that she merely recites the title of the proposed crime and does so in quotation marks to demonstrate to the reader that these are not her words but those of the initiative. HSMO further contends any disclosure of Document 10 would violate its First Amendment free speech rights.

This writ application arises out of the underlying challenge to the ballot summary which is now pending in the circuit court. HSMO seeks protection from an order of the circuit court requiring it to disclose and turn over to plaintiff Karen Strange information gathered by HSMO and its partners, including the findings from a series of focus group studies. The

American Society for the Prevention of Cruelty to Animals, and the Humane Society of the United States.

**2.** All statutory references are to RSMo 2000, unless otherwise noted.

**3.** The fiscal note summary is not at issue in this case.

documentation was developed to formulate political strategy, craft messaging, and analyze how the opponent's political messaging might resonate with the public. This information is contained in what is referred to as Document 10. Prior to the time Respondent, Judge Beetem, assumed management of the case in the trial court, a previous judge ordered that Document 10 be disgorged. After the previous judge recused himself, the trial court declined to reverse course and ruled that the previous discovery order involving Document 10 remained in full force and effect. The trial court reasoned that it was going to be required to analyze the plain meaning of words to determine if the Secretary's ballot language was likely to create prejudice for or against the measure because the name of the proposed new crime, "puppy mill cruelty," was incorporated into the summary. In its order, the trial court states that "Document 10 contains evidence as to the meaning of words to the general public." "It is likened to an additional dictionary which is possessed solely by the Defendants." It found that Document 10 is relevant and material because "it is evidence of how people perceive certain words." We disagree. We hold that the trial judge, who is educated and skilled in the English language, is able to determine as a matter of law whether the Secretary's summary is prejudicial without having to resort to the type of information contained in Document 10. Document 10 is not relevant to the issue to be decided, nor is it reasonably calculated to lead to the discovery of admissible evidence. Accordingly, we need not address HSMO's claim that the discovery order violates its First Amendment rights.

■ A trial court has broad discretion in controlling, managing, and administering the rules of discovery. *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002); *State ex rel. Am. Standard Ins. Co. of Wis. v. Clark*, 243 S.W.3d 526, 529 (Mo.App. W.D.2008). We will interfere with the trial court's exercise of discretion regarding discovery issues only when we deem it to have abused its discretion. *See Am. Standard Ins. Co. of Wis.*, 243 S.W.3d at 529. "The trial court abuses [its] discretion if its order is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *Ford Motor Co.*, 71 S.W.3d at 607. A writ of prohibition is the proper remedy for an abuse of discretion during discovery. *Id.* The party seeking the writ has the burden of proving that the trial court abused its discretion. *Am. Standard Ins. Co. of Wis.*, 243 S.W.3d at 529.

■ Rule 56.01(b) governs the scope of discovery. Pursuant to that rule, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action." Rule 56.01(b)(1). The discovery sought need not be admissible at trial, but must appear "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The party seeking to obtain discovery has the burden of establishing the relevance of the information in order to obtain it. *Id.* Under the current discovery rules, "the purposes of discovery are to eliminate concealment and surprise, to assist litigants in determining facts prior to trial, and to provide litigants with access to proper information through which to develop their contentions and to present their sides of the issues as framed by the pleadings." *See State ex rel. Woytus v. Ryan*, 776 S.W.2d 389, 391 (Mo. banc 1989) (citations omitted).

■■ Evidentiary relevance is directly related to the issue to be decided. Evidence relevant in the context of a given issue or subject matter may not be relevant in another context. The issue to be decided in the context of a ballot title

challenge is set forth in section 116.190. A citizen may challenge a ballot title by bringing an action in the Circuit Court of Cole County. § 116.190.1. The petition must set forth "the reason or reasons why the summary statement portion of the official ballot title is *insufficient* or *unfair* and shall request a different summary statement portion of the official ballot title." § 116.190.3 (emphasis added). The trial court then "shall consider the petition, hear arguments, and in its decision certify the summary statement portion of the official ballot title to the secretary of state." § 116.190.4. We have previously defined "insufficient and unfair": "Insufficient means 'inadequate; especially lacking adequate power, capacity, or competence.' The word 'unfair' means to be 'marked by injustice, partiality, or deception.' Thus, the words insufficient and unfair ... mean to inadequately and with bias, prejudice, deception and/or favoritism state the [consequences of the initiative]." *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo.App. W.D.1994) (internal citations omitted).

■ In this case insufficiency is not an issue. Strange does not claim that the Secretary's summary language inaccurately describes the initiative. Indeed, the term "puppy mill cruelty" is lifted directly from the initiative. The trial court will be deciding only if the summary is fair in the context of whether the language is likely to create prejudice for or against the measure. So, the ultimate issue before the trial court is whether the Secretary's use of "puppy mill cruelty," the title of the proposed crime, is likely to create prejudice for or against the measure.

Strange argues that the term "puppy mill" is a slur and is "inherently prejudicial." As she advances her argument that Document 10 is discoverable, Strange strikes several chords: it may contain ad-

missions from the drafters of the petition that they intended to be prejudicial in their selection of words (improper motive); that, in essence, focus group results are just an additional dictionary to help define words; and the document may contain other evidence to establish that certain words in the statement are likely to create prejudice.

The motives and political strategies of initiative proponents are not relevant to the court's analysis of the Secretary's summary statement. The Secretary had the independent duty to draft official ballot language in accordance with the law. Her duty required that she use her own judgment, and materials such as Document 10 are irrelevant to the exercise of that duty.[4] We judge the final product of her efforts—not the dreams, wishes, and internal calculations of HSMO. If courts must determine the plain meaning of words to resolve an issue, we go where the law tells us to go—the dictionary. *See, e.g., Burns v. Smith*, 303 S.W.3d 505, 512 n. 5 (Mo. banc 2010). Focus group information is not a valid substitute.

Document 10 itself warns of many limitations in its findings because of the limited number of respondents. It points out that the study is not scientific and "cannot be considered reliable or valid in the statistical sense." It also notes that "some of the information will seem inconsistent."

■ In reaching our decision, we keep in mind that a court's role "is not to act as a political arbiter between opposing viewpoints in the initiative process." *Missourians Against Human Cloning v. Carnahan*, 190 S.W.3d 451, 456 (Mo.App. W.D. 2006). Prior to a vote on an initiative, the role of a court is to " 'consider only those threshold issues that affect the integrity of the election itself.' " *Id.* (quoting *United Gamefowl Breeders Ass'n of Mo. v. Nixon*,

---

**4.** The parties agree that the Secretary had no access to Document 10.

19 S.W.3d 137, 139 (Mo. banc 2000)). A finding that Document 10 is relevant and may be considered in the context of the issue presented in this case would likely distort and improperly expand the court's role beyond its limited function of determining only whether the language of the summary statement is insufficient or unfair such that it likely creates prejudice for or against the measure. Judicial intervention is not an appropriate substitute for the give and take of the political process.

Therefore, we find that the determination of whether the Secretary's summary language is unfair, in the context of this case, is essentially a question of law.[5] Accordingly, the political strategy, slogan testing, and random perceptions of focus group participants contained in Document 10 are not relevant to the determination of whether the Secretary's language is unfair.[6] The trial judge is well equipped to decide the issue presented in this case without resort to Document 10. Document 10 is not discoverable, nor is it reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, the preliminary writ of prohibition is made absolute in accordance with this opinion. In all other respects, the writ application is denied.

All concur.

---

5. Particularly where Strange argues that the language is "inherently prejudicial," and the order refers to the information sought as an "additional dictionary," the circumstances of this case suggest that it is a question of law for the court to determine whether the language in the summary is inherently prejudicial, i.e., " 'whether the language fairly and impartially summarizes the purposes of the initiative.' " *See Missourians Against Human Cloning,* 190 S.W.3d at 457 (quoting *Bergman v. Mills,* 988 S.W.2d 84, 92 (Mo.App. W.D. 1999)).

6. Clearly the contested language in the ballot title is not the language of the Secretary. A person looking at the ballot summary will easily discern that the phrase "puppy mill cruelty" is the language of the initiative's proponents. The phrase "puppy mill cruelty" was set out in quotation marks to indicate the content of the initiative.