#27485-a-LSW
**2016 S.D. 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ERIN AGETON,                                           Appellant,

v.

MARTY J. JACKLEY, in his capacity
as South Dakota Attorney General,              Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KATHLEEN F. TRANDAHL
Judge
\* \* \* \*

ALAN T. SIMPSON
EDWARD D. GREIM of
Graves Garrett, LLC
Kansas City, Missouri

and

REBECCA L. MANN
SARA FRANKENSTEIN of
Gunderson, Palmer, Nelson & Ashmore, LLP
Rapid City, South Dakota              Attorneys for appellant.


MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
STEVEN R. BLAIR
Assistant Attorneys General
Pierre, South Dakota              Attorneys for appellee.

\* \* \* \*

ARGUED ON
FEBRUARY 16, 2016
OPINION FILED **03/30/16**

#27485

WILBUR, Justice

[¶1.] In this writ of certiorari action, the applicant asserted that the Attorney General failed to prepare an adequate ballot explanation under SDCL 12-13-25.1. The ballot explanation related to a proposed measure to regulate the maximum finance charge certain lenders can impose on certain loans. The applicant, an opponent to the proposed measure, alleged that the Attorney General's explanation does not educate the voters that the purpose and effect of the measure is to ban short-term lending in South Dakota. After a hearing, the circuit court issued an order denying the application for a writ. The applicant appeals. We affirm.

## Background

[¶2.] Then-State Representative Steve Hickey sponsored an initiated measure to be certified for the November 2016 general election. If adopted, the measure would impose a maximum finance charge against certain lenders for specific types of loans. Before a petition for an initiated measure can be circulated for signatures, the sponsor of the measure must submit a final version to the South Dakota Attorney General. SDCL 12-13-25.1. On April 1, 2015, Representative Hickey submitted a copy of the final version to Attorney General Marty Jackley.

[¶3.] Under SDCL 12-13-25.1, Attorney General Jackley must prepare a title and explanation related to the measure. "The title shall be a concise statement of the subject of the proposed initiative[.]" *Id.* "The explanation shall be an objective, clear, and simple summary to educate voters of the purpose and effect of the proposed initiated measure[.]" *Id.* The Attorney General must also "include a

description of the legal consequences of the proposed . . . measure[.]" *Id.* "The explanation may not exceed two hundred words in length."

[¶4.] In regard to this measure, Attorney General Jackley drafted the following title and explanation:

> Title: An initiated measure to set a maximum finance charge for certain licensed money lenders.
>
> Explanation:
> The initiated measure prohibits certain State-licensed money lenders from making a loan that imposes total interest, fees and charges at an annual percentage rate greater than 36%. The measure also prohibits these money lenders from evading this rate limitation by indirect means. A violation of this measure is a misdemeanor crime. In addition, a loan made in violation of this measure is void, and any principle, fee, interest, or charge is uncollectable.
>
> The measure's prohibitions apply to all money lenders licensed under South Dakota Codified Laws chapter 54-4. These licensed lenders make commercial and personal loans, including installment, automobile, short-term consumer, payday, and title loans. The measure does not apply to state and national banks, bank holding companies, other federally insured financial institutions, and state chartered trust companies. The measure also does not apply to businesses that provide financing for goods and services they sell.

On May 27, 2015, Attorney General Jackley filed the title and explanation with the Secretary of State and submitted a copy to the sponsor. SDCL 12-13-25.1.

[¶5.] On June 5, 2015, Erin Ageton, an opponent of the measure, filed an application for a writ of certiorari in circuit court to challenge the Attorney General's explanation. She asserted that the Attorney General did not comply with his legal duties under SDCL 12-13-25.1 because his explanation failed to educate the voters about the measure's true purpose and effect and failed to describe the legal consequences.

[¶6.]     The process governing a challenge to a ballot explanation is expedited under SDCL 12-13-9.2. "The action takes precedence over other cases in circuit court," and the circuit court must issue a final order "within fifteen days of the commencement of the action." *Id.* On June 15, the court held a hearing. Ageton asked the circuit court to take judicial notice of the documents attached to her application for a writ. Those documents included: (1) a letter from Attorney General Jackley to Secretary of State Shantel Krebs dated May 27, 2015, (2) a letter written by an attorney to Attorney General Jackley in 2013, related to a similar initiated measure, (3) a 2011 University of Washington scholarly article related to the effects of a price cap on payday lenders, (4) a fiscal analysis related to a proposed measure in Missouri that set a 36% cap on certain loans, (5) a 2009 FDIC nationwide survey related to banks' efforts to serve the unbanked and underbanked, and (6) a 2009 study from George Washington University School of Business analyzing consumers' use of payday loans. Counsel for the Attorney General objected because Ageton's documents were not part of the "certified record" submitted by the Attorney General under SDCL 21-31-4. The court expanded the record to include the first two exhibits—the letters—but took under advisement whether to consider the other documents. The court then invited counsel to present oral arguments.

[¶7.]     Ageton argued that, as written, the explanation is mere tautology. She claimed that the explanation does not differentiate purpose from effect: the *purpose* of the measure is to cap the finance charge on certain loans by certain lenders at 36% and the *effect* is that certain lenders will be subject to a 36% cap for finance

charges on certain loans. She alleged that the true purpose and effect of the measure is to ban short-term lending in South Dakota because of the "general knowledge" that short-term lending cannot exist under a 36% cap.

[¶8.] Counsel for the Attorney General responded that Ageton's view of the true purpose and effect "could very well be considered advocacy[.]" Counsel argued that "this is not intended to be the proceeding to litigate whether or not payday lenders are going to be put out of business, and whether or not the 36-percent cap will result in that. . . . As much as counsel and the applicant would like to argue that it is, I think it's fair to say that it's not certain." Counsel also noted that whether the Attorney General "woulda-shoulda-coulda" written the explanation differently is not the standard. In counsel's view, the Attorney General complied with SDCL 12-13-25.1.

[¶9.] On June 18, 2015, the circuit court issued a memorandum decision. The court declined to take judicial notice of the articles attached to Ageton's affidavit in support of her application for a writ. It ruled that Ageton's documents "do not state facts that are 'generally known' or 'capable of accurate and ready determination by sources whose accuracy cannot be reasonably questioned' as is required before a court can take judicial notice." It further ruled that the documents were inadmissible because "certiorari review is limited to considering the record of the proceedings before the officer," which evidence "is pertinent to his decision and the court may not consider matters outside that record."

[¶10.] The court then addressed whether the Attorney General complied with SDCL 12-13-25.1. It noted that the Legislature recently amended SDCL 12-13-25.1.

Prior to its amendment, the statute did not specifically require that the explanation *educate* the voters. The circuit court reviewed Attorney General Jackley's explanation in light of the statutory amendment and this Court's past cases. It found that the Attorney General stated the purpose of the measure. "The explanation educates the voters that while some money lenders are subject to this rate cap, not all money lenders will be subject to this change in law." "The effect or consequence of the initiated measure is that these money lenders licensed under SDCL Ch. 54-4 will be subject to this maximum rate cap, which would be a departure from current state law." In the court's view, the explanation "summarizes the legal consequences if a loan is made in violation of the initiated measure." The court held, therefore, that Attorney General Jackley did not "exceed his statutory authorization under SDCL 12-13-25.1" and "did not abuse his discretion in his drafting of the explanation of the initiated measure to set a maximum finance charge for certain licensed money lenders."

[¶11.] Ageton appeals, asserting the following issues for our review:

1. Whether the circuit court erred by limiting the record and determining that the circuit court may not consider facts outside the record.

2. Whether the Attorney General abused his discretion in failing to consider the information he had notice of regarding the proposed initiated measure.

3. Whether the Attorney General's ballot explanation educates voters about the initiated measure's "purpose," "effect," and "legal consequences" pursuant to SDCL 12-13-25.1.

## Standard of Review

[¶12.] Ageton instituted this action challenging the Attorney General's ballot explanation by filing an application for a writ of certiorari. It is well settled that our scope of review of certiorari proceedings is limited—we examine only whether the officer had jurisdiction and whether the officer regularly pursued the authority conferred upon him. SDCL 21-31-1; *See Cole v. Bd. of Adjustment of the City of Huron*, 1999 S.D. 54, ¶ 4, 592 N.W.2d 175, 176. When the officer has jurisdiction, the officer's decision will be sustained unless he "did some act forbidden by law or neglected to do some act required by law." *Peters v. Spearfish ETJ Planning Comm'n*, 1997 S.D. 105, ¶ 6, 567 N.W.2d 880, 883 (quoting *Save Centennial Valley Ass'n, Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D. 1979)).

[¶13.] In previous cases involving a challenge to the Attorney General's ballot explanation, we have adhered to this limited scope of review. *See S.D. State Fed'n of Labor AFL-CIO v. Jackley*, 2010 S.D. 62, ¶ 7, 786 N.W.2d 372, 375; *Hoogestraat v. Barnett*, 1998 S.D. 104, ¶ 13, 583 N.W.2d 421, 424; *Schulte v. Long*, 2004 S.D. 102, ¶ 11, 687 N.W.2d 495, 498. Ageton, however, argues that "ancient forms of certiorari review" should not "frustrate meaningful review of individual officers' actions[.]" She contends that the Legislature "expressly" created an action under SDCL 12-13-9.2 "with its own substantive standards."

[¶14.] Enacted in 2007, SDCL 12-13-9.2 provides,

> If the proponents or opponents of a proposed amendment to the Constitution, initiated measure, or referred measure believe that the attorney general's statement does not satisfy the requirements of § 12-13-9 or 12-13-25.1, they shall, within seven days of delivery of the statement to the secretary of state, *file an action in circuit court challenging the adequacy of the statement.*

> The action takes precedence over other cases in circuit court and a final order shall be filed within fifteen days of the commencement of the action. Any party appealing the circuit court order to the Supreme Court shall file a notice of appeal within five days of the date of the circuit court order.

(Emphasis added.) From our review of this statute, the Legislature did not create a specific action with its own substantive standards. The Legislature did, however, add the requirement that the Attorney General's statement be *adequate*. Therefore, in addition to deciding whether the Attorney General "did some act forbidden by law or neglected to do some act required by law," we must also review whether the Attorney General's statement is adequate under SDCL 12-13-25.1. *See Peters*, 1997 S.D. 105, ¶ 6, 567 N.W.2d at 883 (explaining this Court's review of certiorari proceedings).

## Analysis

1. **Whether the circuit court erred by limiting the record and determining that the circuit court may not consider facts outside the record.**

### A. Scope of the Record

[¶15.] Ageton claims the circuit court improperly limited the scope of the record when it excluded her evidence of information and general knowledge she argues the Attorney General had a duty to consult when drafting the ballot explanation. According to Ageton, the circuit court compounded this error when it confined its certiorari review "to the few documents 'self-certified' by the Attorney General[.]" She directs this Court to SDCL 21-31-4 and claims "there is only a 'certified record' *after* the court grants the writ." Ageton also insists "judicial notice

should be available to prove the background facts that should have informed the Attorney General's ballot explanation."

### i. Evidence of Background Facts

[¶16.]     Ageton asks, "Can the Attorney General's statutory duty to educate voters *require* the Attorney General to consider outside information, or even general economic facts about how annual percentage rates work over a short term?" (Emphasis added.)  In Ageton's view the answer is "Yes" because the "initiated measure proposes to regulate a complex market" and "accurate voter education may require a basic understanding of that complex market."  She avers, therefore, that the circuit court "should have allowed" her "to make her argument, utilizing information and exhibits for the court's consideration."  In response, the Attorney General emphasizes that the only "record" relevant to the court's review is the one that was before the Attorney General when he drafted the ballot explanation.

[¶17.]     Although the Attorney General certified a record without first being commanded to do so under SDCL 21-31-4, we reject Ageton's claim that "the circuit court jumped the gun when it limited the scope of review" to the record of the proceedings before the officer.  The circuit court did not limit its review to the record certified by the Attorney General.  The court expanded the record to include two letters the court found pertinent to the Attorney General's decision.  It then took under advisement whether to include the additional evidence offered by Ageton.

### ii. Judicial Notice

[¶18.]     Ageton next argues that the circuit court erred when it held that judicial notice is not appropriate in a certiorari proceeding.  Ageton is incorrect.

Judicial notice is available in a certiorari proceeding, and the circuit court did not hold otherwise. Rather, the court declined to take judicial notice of Ageton's documents because the documents did not contain facts that would be generally known or capable of accurate and ready determination "from sources whose accuracy cannot reasonably be questioned." *See* SDCL 19-19-201(b)(1), (2) (requirements for judicial notice). The court found that the documents were not pertinent to the Attorney General's decision and contained opinions from authors based on research those authors or others had done.

[¶19.] In a footnote in her reply brief, Ageton alternatively argues that the circuit court clearly erred when it refused to take judicial notice of her documents. She claims that the documents were offered as "examples of general economic knowledge" that the "36% cap on finance charges is a de facto ban on short-term lending." She then faults the court for not examining the documents to determine "whether some or all of the background material contained therein was appropriate for judicial review."

[¶20.] The circuit court was not required to scrutinize approximately 100 pages submitted by Ageton to determine if somewhere in those many pages there was a fact worthy of judicial notice. And from our review of the documents, we cannot say the facts are generally known or capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. For example, in one document offered by Ageton, the author uses a formula to calculate simple interest—"$r = I/Pt$"—and opines that "an interest rate ceiling of 36 percent or below do not generate revenues to meet variable costs and stores shut down."

Another article "reviews existing evidence and presents new evidence on the economic and demographic characteristics of payday loan customers, their patterns of payday loan use, their understanding of payday loan costs and alternatives, and outcomes of payday loan use." The court did not err when it concluded that Ageton's documents were not appropriate for judicial notice.

> **2. Whether the Attorney General abused his discretion in failing to consider the information he had notice of regarding the proposed initiated measure.**
>
> **and**
>
> **3. Whether the Attorney General's ballot explanation educates voters about the initiated measure's "purpose," "effect," and "legal consequences" pursuant to SDCL 12-13-25.1.**

[¶21.] We combine Ageton's next two issues.\* Whether the Attorney General abused his discretion necessarily depends on whether the Attorney General's ballot explanation is adequate under SDCL 12-13-25.1. Ageton contends the Attorney General failed to "consider information received regarding the proposed initiated measure" and ignored "generally known facts." She also avers that the Attorney General's explanation does not meet the requirements of SDCL 12-13-25.1 because the ballot explanation fails to educate voters on the measure's true purpose, effect, and legal consequences. In Ageton's view, the Attorney General was required to "explain the effect of a 36% cap on short-term lenders' finance charges."

---

\* According to Ageton, "[t]his case presents the first true test of South Dakota's new standard for judging ballot measure 'explanations' drafted by the attorney general pursuant to SDCL 12-13-25.1." On the contrary, we examined the new statutory standard in *Jackley*, 2010 S.D. 62, 786 N.W.2d 372. Although *Jackley* involved SDCL 12-13-9, that statute contains the same language as SDCL 12-13-25.1 governing what the Attorney General must include in an explanation.

Otherwise, "only economically and financially astute voters or petition signers will realize the initiated measure bans short-term lending."

[¶22.]     In *Jackley*, we recognized that the Legislature amended the statute governing Attorney General ballot explanations.  2010 S.D. 62, ¶ 8, 786 N.W.2d at 375.  Prior to the amendment, the purpose of a ballot explanation was to inform voters.  *Id.*  Now a ballot explanation must contain an "objective, clear, and simple summary *to educate* the voters of the purpose and effect" of the initiated measure. *Id.* ¶ 9.  We also highlighted that the explanation must contain a description of the legal consequences, including the likely exposure of the state to liability if a measure is adopted.  *Id.*  And, under SDCL 12-13-9.2, the Attorney General's statement must be adequate.

[¶23.]     Despite these statutory changes, we reiterated that the "Attorney General 'is granted discretion as to how to author the ballot statement.'"  *Id.* ¶ 7 (quoting *Schulte*, 2004 S.D. 102, ¶ 11, 687 N.W.2d at 498).  This is because the Attorney General is the officer charged by the Legislature with the duty of preparing a "statement which consists of a title and explanation."  SDCL 12-13-1, - 25.1.  So when reviewing a challenge to the Attorney General's statement, our function is limited.  *Schulte*, 2004 S.D. 102, ¶ 11, 687 N.W.2d at 498.  "We merely determine if the Attorney General has complied with his statutory obligations and we do not sit as some type of literary editorial board."  *Id.*

[¶24.]     Here, even if we accept that the proponent's *true* purpose with the initiated measure is to end short-term lending in South Dakota, that purpose and effect is more appropriate for political dispute and advocacy.  There is no language

in the initiated measure that specifically bans short-term lending in South Dakota. And, although a 36% interest rate cap on short-term loans for certain lenders might prompt those lenders to cease providing short-term loans, the initiated measure does not prohibit their continued operation.

[¶25.]     As Justice Zinter recognized in his special writing in *Schulte*, "[p]ublic questions often have substantial political overtones." 2004 S.D. 102, ¶ 26, 687 N.W.2d at 501 (Zinter, J., concurring) (quoting *Gormley v. Lan*, 438 A.2d 519, 525-26 (N.J. 1981)). Likewise, "there can be substantial dispute as to what the true purpose of an amendment is; indeed there may be many 'true purposes.'" *Gormley*, 438 A.2d at 525. It is simply not for this Court or the circuit court to require the Attorney General to include every practical or possible effect of each initiated measure. "We cannot be concerned with what the Attorney General should have said or could have said or might have said or what is implied or suggested by what he did say. Rather we must focus on the language chosen[.]" *Schulte*, 2004 S.D. 102, ¶ 18, 687 N.W.2d at 500. From our review of the Attorney General's ballot explanation, the Attorney General did not abuse his discretion, and the explanation is adequate under SDCL 12-13-25.1.

[¶26.]     Affirmed.

[¶27.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.