OPINION OF THE SUPREME COURT OF NEBRASKA

NOTICE: THIS OPINION IS BEING POSTED TEMPORARILY IN "SLIP" OPINION FORM. IT WILL BE REPLACED AT A LATER DATE WITH AN "ADVANCE" OPINION, WHICH WILL INCLUDE A CITATION.

Case Title

TRINA L. THOMAS, APPELLANT,
V.
THE HONORABLE DOUGLAS J. PETERSON, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, IN HIS OFFICIAL CAPACITY, AND THE HONORABLE ROBERT B. EVNEN, SECRETARY OF STATE OF THE STATE OF NEBRASKA, IN HIS OFFICIAL CAPACITY, APPELLEES, AND ALBERT DAVIS III ET AL., INTERVENORS-APPELLEES.

Case Caption

THOMAS V. PETERSON

Filed September 10, 2020.    No. S-20-596.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

J.L. Spray and Stephen D. Mossman, of Mattson Ricketts Law Firm, for appellant.

Douglas J. Peterson, Attorney General, Ryan S. Post, and L. Jay Bartel, for appellees.

Mark C. Laughlin and Daniel J. Gutman, of Fraser Stryker, P.C., L.L.O., for intervenors-appellees.

THOMAS v. PETERSON

Filed September 10, 2020.   No. S-20-596.

1. **Judgments: Jurisdiction.** A jurisdictional question which does not involve a factual dispute is a matter of law.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
3. **Initiative and Referendum.** Whether a ballot title is insufficient or unfair is a question of law.
4. **Judgments: Appeal and Error.** On questions of law, an appellate court is obligated to reach a conclusion independent of the decision by the trial court.
5. **Appeal and Error.** When reviewing the trial court's factual findings, an appellate court reviews for clear error.
6. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.
7. **Statutes: Jurisdiction.** Jurisdictional statutes must be strictly construed.
8. **Legislature: Intent.** The intent of the Legislature is generally expressed by omission as well as by inclusion.
9. **Statutes: Appeal and Error.** An appellate court is not at liberty to add language to the plain terms of a statute to restrict its meaning.
10. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not passed upon by the trial court.
11. **Evidence.** Unless an exception applies, only a preponderance of evidence is required in civil cases.
12. **Public Officers and Employees: Presumptions.** Absent contrary evidence, public officers are presumed to faithfully perform their official duties.
13. **Initiative and Referendum: Proof.** A deferential standard is to be applied to a ballot title prepared by the Attorney General, and a dissatisfied person must prove by the greater weight of the evidence that the ballot title is insufficient or unfair.
14. **Initiative and Referendum.** A ballot title is sufficient if it recites the general purposes of the proposed law and if the ballot title contains enough information to sufficiently advise voters of the true contents of the proposed law.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PER CURIAM.

Trina L. Thomas appealed to the district court from the Attorney General's submission of an explanatory statement and ballot title for an initiative petition that would amend provisions of the Delayed Deposit Services Licensing Act (the Act), Neb. Rev. Stat §§ 45-901 to 45-931 (Reissue 2016 & Cum. Supp. 2018). The court found that it lacked jurisdiction to review the explanatory statement, and it certified the ballot title prepared by the Attorney General. Thomas appeals, requesting that this court hold that the inclusion of the phrase "payday lenders" creates an insufficient and unfair ballot title. We affirm.

BACKGROUND

Albert Davis III; Thomas A. Wagoner, Jr.; and Fr. Damian Zeurlein are the sponsors of an initiative petition that would establish a 36-percent statutory cap on the annual percentage rate that may be charged by delayed deposit services licensees.[1] To achieve its objective of reducing the amount that licensees can charge, the initiative petition seeks to amend Nebraska statutes to prohibit licensees from evading the new rate cap and to deem any transaction in violation void and uncollectible.

On June 25, 2020, the sponsors submitted signatures to the Secretary of State for validation. In accordance with Neb. Rev. Stat. § 32-1410(1) (Reissue 2016), on July 8, the Secretary of State transmitted a copy of the measure to the Attorney General. On July 20, the Attorney General transmitted to the Secretary of State the explanatory statement and ballot title to be placed on Nebraska's November 3 general election ballot. The text of the explanatory statement and ballot title prepared by the Attorney General is as follows:

[EXPLANATORY STATEMENT]

*A vote "FOR" will amend Nebraska statutes to: (1) reduce the amount that delayed deposit services licensees, also known as payday lenders, can charge to a maximum annual percentage rate of thirty-six percent; (2) prohibit payday lenders from evading this rate cap; and (3) deem void and uncollectable any delayed deposit transaction made in violation of this rate cap.*

*A vote "AGAINST" will not cause the Nebraska statutes to be amended in such manner.* [(Emphasis in original.)]

[BALLOT TITLE]

Shall Nebraska statutes be amended to: (1) reduce the amount that delayed deposit services licensees, also known as payday lenders, can charge to a maximum annual percentage rate of thirty-six percent; (2) prohibit payday lenders from evading this rate cap; and (3) deem void and uncollectable any delayed deposit transaction made in violation of this rate cap?

---

[1] See § 45-902.

- 3 -

Dissatisfied with the Attorney General's submission, on July 27, 2020, Thomas, a resident of Lancaster County, a taxpayer, a registered voter, and an operator of Paycheck Advance, a delayed deposit services business, filed a "Complaint and Ballot Title Appeal," pursuant to § 32-1410(3), in the district court for Lancaster County. Thomas named the Attorney General and the Secretary of State, in their official capacities, as defendants. Thomas alleged that the explanatory statement and ballot title are insufficient and unfair, because they use "the slang term 'payday lenders.'" Thomas alleged that the term "payday lenders" is not contained within § 45-918 or § 45-919, the provisions of the Act which the initiative petition seeks to amend. Thomas alleged the explanatory statement and ballot title are "deceptive to the voters as [they] unfairly cast[] the measure in a light that would prejudice the vote in favor of the initiative." Thomas prayed that the court remove the phrase "also known as payday lenders" and certify a modified explanatory statement and ballot title to the Secretary of State.

The Attorney General and Secretary of State filed a joint answer. They alleged that under § 32-1410(3), the court is authorized to review only the ballot title and lacks jurisdiction to alter the explanatory statement. They alleged that the ballot title provided by the Attorney General is sufficient, fair, and not misleading and that thus, a different ballot title is not warranted.

The court granted a complaint in intervention filed by the sponsors. The sponsors alleged that the term "payday lenders" is sufficient and fair and that it provides an accurate description of what the initiative petition would accomplish. They alleged that the payday loan industry identifies licensees as "payday lenders" and that the term is used by Nebraska's Department of Banking and Finance (DBF) and the general public. They stated that Thomas did not allege that the general public knows the meaning of the term "delayed deposit services licensee." Therefore, the sponsors contended, Thomas' alternative language would increase the likelihood of voter confusion.

The court held a hearing on the matter on August 10, 2020. The court received affidavits with attached exhibits from Thomas, the Attorney General and the Secretary of State, and the sponsors. Thomas argued that the term "payday lenders" is not present in the measure and, except for one provision,[2] is not present in the Act. Thomas argued that according to the DBF's interpretive Ooinion No. 8 filed in 2014, which she offered into evidence, licensees do not offer loans. She argued that licensees are not lenders, because they charge a fee, and therefore including the phrase "also known as payday lenders" would be unfair because it makes the initiative petition "something else than what it is."

On August 19, 2020, the court issued a written order entering judgment in favor of the Attorney General, the Secretary of State, and the sponsors. That court found that it lacked jurisdiction to review the explanatory statement prepared by the Attorney General, because § 32-1410(3) states that "[a]ny person who is dissatisfied with the *ballot title* provided by the Attorney General for any measure may appeal from his or her decision to the district court . . . ." (Emphasis supplied.)

The court also found that a deferential standard applied to its review of the ballot title prepared by the Attorney General. In doing so, the court relied upon previous orders from the

---

[2]  § 45-920(2).

- 4 -

district court for Lancaster County which found that in cases brought under § 32-1410(3), the court will not alter a ballot title absent clear evidence that the proposed language is insufficient or unfair.

The court found no legal support for Thomas' argument that the term "payday lenders" "is not part of the statute being amended by the initiative petition." The court further found that the Attorney General satisfied the requirement under § 32-1410(1) that the ballot title "shall express the purpose of the measure in not exceeding one hundred words." The court determined that the term "payday lenders" is not improper, as it is familiar to the general public. The court relied upon the DBF's interpretive opinion No. 8, which states in relevant part:

> The definition of "delayed deposit services business" does not include offering loans. The [DBF] interprets this to mean that delayed deposit transactions are not recognized as loans, and therefore, should not be represented as loans by the licensee.
>
> In order to operate in accordance with the Act, a licensee may use the phrase "payday loan" in its advertising, signage, coupons, contracts, or other customer contacts, but may not use the term "loan" by itself for any purpose. . . . Licensees may not be listed, or advertise, in a telephone book under the Loans section. Permissible telephone book sections include: Cash Advance Services, Payday Loan, and Payroll Advancement.

The court found that Thomas "failed to meet her burden to demonstrate that the Attorney General's ballot title is clearly insufficient or unfair." The court's order stated:

> The ballot title clearly expresses that the purpose of the measure is to prevent the licensees from imposing an annual percentage rate greater than thirty-six percent by rendering any transaction in violation of this requirement void and uncollectable, and to prohibit the licensees from evading this requirement. The Court cannot perceive how the inclusion of the term "payday lenders," which is used by the licensees, the [DBF], and the general public alike, would deceive or mislead voters into supporting the initiative. Thus, the Court finds that the Attorney General's ballot title is sufficient and fair.

Thomas timely appealed. We moved the case to our docket and granted expedited review.

## ASSIGNMENTS OF ERROR

Thomas assigns, restated, that the district court erred in (1) concluding that it lacked jurisdiction to review the explanatory statement, (2) relying upon evidence other than the initiative measure, (3) applying a deferential standard in reviewing the Attorney General's proposed ballot title, and (4) failing to find that the explanatory statement and ballot title are insufficient or unfair.

## STANDARD OF REVIEW

[1-5] A jurisdictional question which does not involve a factual dispute is a matter of law.[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court

---

[3] *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018).

below.[4] Whether a ballot title is insufficient or unfair is a question of law.[5] On questions of law, an appellate court is obligated to reach a conclusion independent of the decision by the trial court.[6] When reviewing the trial court's factual findings, we review for clear error.[7]

## ANALYSIS

### NO JURISDICTION OVER EXPLANATORY STATEMENT

This court has not previously had occasion to address the legal standards governing ballot title challenges under § 32-1410. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[8]

Here, the district court determined that it lacked jurisdiction to review the explanatory statement prepared by the Attorney General, reasoning that under § 32-1410(3), the Legislature did not provide the courts the authority to review anything other than the ballot title. On appeal, the Attorney General, the Secretary of State, and the sponsors agree with the district court's interpretation. Thomas disagrees and argues that a ballot title and explanatory statement are inextricably linked under § 32-1410 and that thus, the district court had jurisdiction to review both. Upon de novo review, we conclude that under the plain text of § 32-1410, the district court's jurisdiction extends only to the ballot title and not to the explanatory statement.

[6-9] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.[9] Jurisdictional statutes must be strictly construed.[10] The intent of the Legislature is generally expressed by omission as well as by inclusion.[11] We are not at liberty to add language to the plain terms of a statute to restrict its meaning.[12]

Section 32-1410 indicates that any person who is dissatisfied with the ballot title provided by the Attorney General for any measure may appeal from his or her decision to the district court. Nothing within the text of the statute authorizes an appeal when a person is dissatisfied with an explanatory statement. As such, § 32-1410 did not authorize the district court to consider Thomas' challenge to the explanatory statement. We express no opinion as to whether Thomas had any other path to assert an appeal based on the explanatory statement, nor have we been asked to consider another path.

---

[4] *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

[5] See *Humane Society of Missouri v. Beetem*, 317 S.W.3d 669 (Mo. App. 2010).

[6] See *Stewart v. Advanced Gaming Tech.*, 272 Neb. 471, 723 N.W.2d 65 (2006).

[7] See *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008).

[8] *Webb v. Nebraska Dept. of Health & Human Servs.*, 301 Neb. 810, 920 N.W.2d 268 (2018).

[9] *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002).

[10] *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[11] *Id*.

[12] *Id*.

If there truly is no mechanism to challenge the Attorney General's explanatory statement, that could lead to a curious result. If, for instance, the district court found that the ballot title contained language which was insufficient or unfair and that same language was contained within the explanatory statement, the district court would lack authority under § 32-1410 to address the offending language in the explanatory statement. When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result.[13] However, based on our disposition of this matter more fully discussed below, we cannot say in this case that the potential for a hypothetical insufficient or unfair explanatory statement that is unalterable is so absurd that the Legislature could not possibly have intended it. Accordingly, we believe it best to leave any corrective action regarding § 32-1410 to the Legislature.[14]

## EVIDENCE ARGUMENT NOT PRESENTED

[10] Thomas' next argument is that the court erred in receiving and considering evidence beyond the initiative petition measure. However, it is clear that Thomas did not assert this argument during the proceedings in district court. Thomas herself requested that the court consider evidence beyond the measure, and the court granted that request and relied upon evidence adduced by Thomas. While Thomas lodged evidentiary objections to other exhibits, she did not argue that a court is prohibited from considering evidence outside the measure in a ballot title appeal. We will not consider Thomas' argument. An appellate court will not consider an issue on appeal that was not passed upon by the trial court.[15]

## BURDEN OF PROOF

The next issue before this court is the appropriate burden of proof for a court to apply in a ballot title challenge under § 32-1410. This raises a matter of first impression under Nebraska law.

[11] Section 32-1410(3) states that the person who has appealed the Attorney General's decision to the district court "shall file a petition asking for a different title and setting forth the reasons why the title prepared by the Attorney General is insufficient or unfair." Section 32-1410(3) establishes that in a ballot challenge proceeding, the burden of proof is on the challenger to prove that the ballot title is insufficient or unfair. The trial court here relied upon decades of unchallenged rulings in the Lancaster County District Ccourt and found that a challenger to a ballot title fails to sustain its burden of proof unless it can establish that a ballot title is clearly insufficient or unfair. Thomas argues on appeal that the court erred by adding "clearly" to § 32-1410(3). We agree. Although § 32-1410(3) does not specify a burden of proof to be applied by a court, unless an exception applies, only a preponderance of evidence is required in civil cases.[16]

---

[13] *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013).

[14] See *Lombardo, supra* note 10. See, also, Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 234-39 (2012).

[15] *Siedlik v. Nissen*, 303 Neb. 784, 931 N.W.2d 439 (2019).

[16] *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019).

[12] Section 32-1410(3) begins with the presumption that the ballot title prepared by the Attorney General is valid, and it places the burden upon the dissatisfied party to dispel this presumption. This is consistent with the long-held principle in Nebraska that, absent contrary evidence, public officers are presumed to faithfully perform their official duties.[17] "The process of producing a 100 word purpose statement that constitutes a 'true and impartial explanation' of the measure 'involves a degree of discretion entrusted to the Attorney General by the Legislature that we will not overturn absent noncompliance with the statute.'"[18]

Other states have adopted similar standards. The Supreme Court of South Dakota has explained, because the Attorney General is charged with the statutory duty of preparing a ballot title, a court's review of a challenge to the Attorney General's submission serves a limited function.[19] "'We merely determine if the Attorney General has complied with his statutory obligations and we do not sit as some type of literary editorial board.'"[20] Similarly, the Supreme Court of North Dakota has aptly stated that "[i]f the ballot title is neither misleading nor unfair, it is not our responsibility to draft a better one."[21]

[13] As a matter of first impression, we hold that a deferential standard is to be applied to a ballot title prepared by the Attorney General and that a dissatisfied person must prove by the greater weight of the evidence that the ballot title is insufficient or unfair.

BALLOT TITLE NOT INSUFFICIENT OR UNFAIR

Turning to the merits, Thomas contends that the ballot title prepared by the Attorney General and certified by the district court is insufficient and unfair under § 32-1410(3) and that the ballot title should be modified to remove the phrase "also known as payday lenders." Thomas argues that the term "payday lenders" is not found in the measure nor the Act, that the term "lenders" is misleading because licensees do not offer loans, and that the term "payday lenders" is a slang term which prejudices voters. Based on the record before us, and applying our newly adopted burden of proof, we agree with the district court that none of Thomas' arguments have any merit. Therefore, Thomas failed to carry her burden to prove that the ballot title prepared by the Attorney General is insufficient or unfair.

Section 32-1410(1) provides that the ballot title "shall express the purpose of the measure in not exceeding one hundred words" and "shall be so worded that those in favor of adopting the measure shall vote For and those opposing the adoption of the measure shall vote Against."

---

[17] *County of Webster v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 751, 896 N.W.2d 887 (2017). See, also, *In re App. No. C-4973 of Skrdlant*, 305 Neb. 635, 942 N.W.2d 196 (2020); *Johnson v. Neth*, 276 Neb. 886, 758 N.W.2d 395 (2008); *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005); *Nye v. Fire Group Partnership*, 263 Neb. 735, 642 N.W.2d 149 (2002); *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001).

[18] *Montana Consumer Finance Ass'n v. State*, 357 Mont. 237, 243, 238 P.3d 765, 768 (2010).

[19] *Ageton v. Jackley*, 878 N.W.2d 90 (S.D. 2016).

[20] *Id*. at 96, quoting *Schulte v. Long*, 687 N.W.2d 495 (S.D. 2004) (superseded by statute as stated in *SD AFL-CIO v. Jackley*, 786 N.W.2d 372 (S.D. 2010)).

[21] *Municipal Services Corp. v. Kusler*, 490 N.W.2d 700, 703 (N.D. 1992).

Section 32-1410(3) provides that "[a]ny person who is dissatisfied with the ballot title provided by the Attorney General" may appeal to the district court and file a petition setting forth the reasons why the ballot title is "insufficient or unfair." The word "insufficient" means ""inadequate; especially lacking adequate power, capacity, or competence.""[22] The word "unfair" means to be ""marked by injustice, partiality, or deception.""[23]

[14] A ballot title is sufficient if it recites the general purposes of the proposed law and if the ballot title contains enough information to sufficiently advise voters of the true contents of the proposed law.[24] A court's task is not to require or draft the perfect proposed ballot title in an initiative election, but merely to determine if the title presented is legally sufficient.[25] In reviewing a ballot title, the court must not concern itself with the merit or lack of merit of the proposed measure, because that determination rests with the electorate.[26]

In *Brown v. Carnahan*,[27] the Supreme Court of Missouri considered a ballot challenge to a payday loan initiative that would limit the annual percentage rate for payday, title, installment, and other high-cost consumer credit and small loans to 36 percent annually. Because the summary statement stated only that the initiative would "'limit the annual rate of interest'" without specifying the rate, the trial court found that the statement was not fair or sufficient.[28] The trial court found that it was necessary to rewrite the statement to qualify that the limitation would be 36 percent. The appellate court reversed, finding that the summary statement was not misleading because it accurately communicated the purpose of the initiative, which was to limit the permissible interest rate for payday loans. The court found that even if the language provided by the trial court is more specific, and even if that level of specificity might be preferable, whether the summary statement prepared by the public official is the best language is not the test. Rather, all that is required is that the public official prepare a statement which adequately states the consequences of the initiative without bias, prejudice, deception, or favoritism.[29]

Here, Thomas argues that the phrase "payday lenders" creates an insufficiency, because the phrase is not part of the measure, or the Act, and because licensees do not offer loans. However, the phrase "also known as payday lenders" appears in the objective statement of the draft initiative petition in our record. Moreover, as Thomas acknowledges, § 45-920(2) refers to "delayed deposit services businesses, *payday lenders*, or similar entities." (Emphasis supplied.) In addition, § 45-917 requires that every licensee, at the time any delayed deposit transaction is

---

[22] *Beetem, supra* note 5, 317 S.W.3d at 673.

[23] *Id*.

[24] See, *In re Initiative Petition No. 347 State Question No. 639*, 813 P.2d 1019 (Okla. 1991); 82 C.J.S. *Statutes* § 173 (2009).

[25] *Cox v. Daniels*, 374 Ark. 437, 288 S.W.3d 591 (2008); 42 Am. Jur. 2d *Initiative and Referendum* § 45 (2020); 82 C.J.S., *supra* note 24, § 172.

[26] *Kusler, supra* note 21.

[27] *Brown v. Carnahan*, 370 S.W.3d 637 (Mo. 2012).

[28] *Id*. at 663.

[29] See *Brown, supra* note 27.

made, give to the maker of the check a written notice which states, in part, "THE LAW DOES NOT ALLOW THIS TYPE OF TRANSACTION TO BE MORE THAN FIVE HUNDRED DOLLARS ($500) IN TOTAL, INCLUDING FEES AND CHARGES, FROM ONE *LENDER*." (Emphasis supplied.) Additionally, Paycheck Advance's own deferred deposit agreement, offered into evidence by Thomas, references the agreement as a "Truth-In Lending Act Disclosure." Lastly, the DBF's interpretive opinion No. 8 offered into evidence by Thomas provides that licensees are permitted to use the term "payday loan" in advertising. Thomas has not asserted any other reasons why the ballot title does not provide an accurate description of the initiative petition's purpose, which is to prevent licensees from imposing an annual percentage rate greater than 36 percent and to enforce this requirement by rendering any transaction in violation of this requirement void and uncollectible.

Thomas argues that the term "payday lenders" creates an unfairness, because it is a slang term. However, Thomas has not offered any evidence to support this position. This is not a case where a colloquial term is substituted for a statutory term; rather, it supplements the statutory term with a commonly used term. We agree with the district court that the term "payday lenders" would not deceive or mislead voters regarding the initiative petition, because the record shows "payday lenders" is a term commonly known by the general public and used within the payday loan industry. We further agree with the district court that the Attorney General's decision to use "payday lenders" clarifies the measure, because no evidence was presented that the general public knows the meaning of the term "delayed deposit services licensees." As a result, Thomas has failed to carry her burden.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court, which certified the ballot title prepared by the Attorney General.

AFFIRMED.